IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 30, 2008

Charles R. Fulbruge III
Clerk

No. 06-50510

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

ALLAN HAWLEY

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Texas

Before DeMOSS, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Following a jury trial, Allan Hawley was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court applied the Armed Career Criminal Act (ACCA) and sentenced Hawley to 240 months' imprisonment, five years of supervised release, and a $100 special assessment. Hawley appeals the district court's admission of certain evidence and application of the ACCA. We affirm.

I

At approximately 2 a.m. one morning, Joseph Miguels heard someone knocking loudly on the door to the apartment above his and went out to investigate. He saw Hawley, who then determined no one was at the apartment

to which he was seeking entrance. Hawley then asked Miguels if he could use Miguels's restroom. Miguels agreed. While Hawley was in the bathroom he did not completely close the door, and as Miguels passed by, he saw Hawley remove a revolver from his waistband and "stuff[] it down the front of his pants."

This frightened Miguels, so he left and called the police from a neighboring apartment. When Miguels went back to his apartment, Hawley was gone. Miguels then went to the parking lot, where he encountered Hawley "working on" a white truck. Hawley asked if he had scared Miguels and if Miguels had called the police, and Miguels answered "no" to both questions. Miguels noticed a brown bag inside the truck and went back to his apartment and called the police a second time. Shortly thereafter, Austin police officer William G. White arrived at Miguels's apartment. Miguels told him that Hawley was in the parking lot "tearing apart the dash of a truck." Officer White called for backup, went to the parking lot, and observed Hawley "manipulating" the steering column of the truck. When Officer White saw a dark object in Hawley's pants pocket that looked like a gun handle, Officer White drew his weapon, identified himself as a police officer, shined his flashlight on Hawley, and ordered him to "freeze." Hawley put his hands partially up but then started walking backwards. He stopped after approximately 20 feet. Officer White determined that the object in Hawley's pocket was a Dremel drill, and he instructed Hawley to drop a set of keys with a multitool attached to it that Hawley was holding. Officer White handcuffed Hawley and found Hawley in possession of a razor blade and flashlight.

Hawley told Officer White that he was working on the truck for someone else but that he did not have the keys to the truck. Backup then arrived, and Officer White had Hawley sit on the sidewalk. Officer White looked into the truck and noticed that the steering column and the vent window panel were damaged. A pair of plyers and a wrench were in the seat of the truck. Officer

2

White then returned to Miguels's apartment and asked Miguels if he could have mistaken the Dremel drill for a gun. Miguels responded that "he was sure it had been a revolver, [and] he knew what one looked like." After returning to the parking lot, Officer White learned that the registered owner of the truck was Martin Richardson. Officer White then arrested Hawley for "attempted auto theft" and found two VIN plates that had been removed from vehicles, two attachments for the Dremel drill, a small pin-link screwdriver, and a Motorola cell phone on Hawley's person.

Officer White's backup officer found a brown bag behind a bush about fifteen feet from the truck, near the location to where Hawley had retreated when Officer White had ordered him to "freeze." The bag contained bolt cutters, a revolver loaded with five live rounds and black electrical tape wrapped around the handle, a spent shell casing, a charger for a Dremel drill that fit the battery of the drill that was in Hawley's pocket, a screwdriver handle, binoculars, a piece of wire with the copper exposed at both ends, a bluish-gray t-shirt, a pair of tan pants, a pair of heavy gloves, a small black bag containing four Allen wrenches, an attachment for a tire iron, a small voice-recorder, a small crescent wrench, sanding disc attachments for a Dremel drill, a silver screwdriver, and a Motorola cell phone charger. Miguels identified the revolver as the one that he had seen earlier in Hawley's waistband. Hawley was subsequently charged as a felon in possession of a firearm. At trial, over Hawley's objection, Austin police detective Haldor Buck testified as an auto-theft expert that each of the items in the brown bag could be used to facilitate theft of an automobile and that the brown bag and its contents constituted an "auto theft kit."

The jury found Hawley guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court applied the ACCA to Hawley based on three prior violent felony convictions: a 1984 California conviction for grand theft from a person, a 1986 California conviction

for burglary of a residence, and a 1994 Western District of Texas conviction for bank robbery. Hawley challenged the two California convictions at sentencing, alleging that they did not qualify as violent felonies under the ACCA. The district court rejected these challenges and sentenced Hawley to 240 months imprisonment, five years of supervised release, and a $100 special assessment.

Hawley now appeals the admission of Detective Buck's testimony regarding automobile theft and the determination at sentencing that Hawley's California conviction for grand theft from a person is a violent felony under the ACCA.

## II

We first consider the challenges to the district court's admission of Detective Buck's testimony. We review a trial court's evidentiary ruling under an abuse-of-discretion standard when the party challenging the ruling makes a timely objection.[1] "Such review is necessarily heightened in a criminal case, however, which demands that 'evidence . . . be strictly relevant to the particular offense charged.'"[2]

Hawley specifically challenges Detective Buck's testimony that each item found in the brown bag could be used to steal cars and that the bag and its contents constituted an "auto theft kit." Hawley argues that this is evidence of "other crimes, wrongs, or acts" that is inadmissible under FEDERAL RULE OF EVIDENCE 404(b). The Government contends that (1) Rule 404(b) does not apply because the evidence is intrinsic to the charged offense and (2) even if Rule 404(b) applies, the evidence is admissible because it was used to prove identity.

Rule 404(b) states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in

---

[1] United States v. Hernandez-Guevara, 162 F.3d 863, 869 (5th Cir. 1998).

[2] Id. (quoting United States v. Hays, 872 F.2d 582, 587 (5th Cir. 1989) (quoting Williams v. New York, 337 U.S. 241, 247 (1949))) (quotations omitted).

conformity therewith." But such evidence is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."[3] The admissibility of evidence pursuant to Rule 404(b) is analyzed in a two-step inquiry: "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [FEDERAL RULE OF EVIDENCE] 403."[4]

Rule 404(b), however, only applies to evidence that is extrinsic to the charged crime.[5] "Evidence that is 'inextricably intertwined' with the evidence used to prove the crime charged is not 'extrinsic' evidence under Rule 404(b). Such evidence is considered 'intrinsic' and is admissible so that the jury may evaluate all the circumstances under which the defendant acted."[6]

Before calling Detective Buck to testify, the Government asserted that Detective Buck's testimony was "intrinsically and inextricably intertwined" with the underlying crime. The Government then stated that its alternative position was that the testimony was admissible under Rule 404(b) to connect Hawley to the contents of the bag. Hawley then objected, stating that the evidence was "not admissible under 404" and that "the prejudicial value would outweigh the probative value" under Rule 403.

When admitting the evidence, the district court stated:

---

[3] FED. R. EVID. 404(b).

[4] United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

[5] United States v. Navarro, 169 F.3d 228, 233 (5th Cir. 1999).

[6] Id. (quoting United States v. Royal, 972 F.2d 643, 647 (5th Cir. 1992) (quoting United States v. Randall, 887 F.2d 1262, 1268 (5th Cir. 1989))) (quotations omitted).

I'm not sure there's even a 404(b) situation here on what at least at one time we used to call the res gestae of the crime, because I do think that the alleged burglary or attempted theft of an automobile is so inextricably related to this crime that you can't pull them apart.

However, to the extent you can, I find that the government is entitled to put on the evidence of what they—what was discovered at the scene, what the defendant was doing. . . . I do think it is relevant to an issue other than the defendant's character. It is relevant if nothing else but for identity. And I do not find the evidence of tools and what they could be used for, the probative value of that to be substantially outweighed by the prejudice.

So, for that and all of the reasons stated in 404(b) and after having weighed the balancing test that is provided in Rule 403, I find that the expert can testify as to the matters that were described to the Court . . . as to what you intend to have [Detective Buck] testify to.

We find it unnecessary to resolve whether the challenged evidence was "extrinsic" and therefore whether Rule 404(b) was implicated because any possible error in admitting the evidence at issue was harmless. In a harmless error examination, we view the error in relation to the entire proceeding, not merely in isolation.[7] Reversal is not required unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction.[8] When the other evidence of guilt is overwhelming, and the error would not have substantially influenced the jury's verdict, the error is harmless.[9]

Our decision in United States v. Williams is illustrative of this court's approach in examining harmless errors. Williams was charged and convicted of intent to distribute cocaine when police found in his possession two kilograms

---

[7] United States v. Williams, 957 F.2d 1238, 1244 (5th Cir. 1992).

[8] Schneble v. Florida, 405 U.S. 427, 430 (1972).

[9] Williams, 957 F.2d at 1244.

of the drug. We held that the erroneous admission of a single marijuana cigarette found in the defendant's wallet was harmless error since the evidence of Williams's guilt was overwhelming.[10] Specifically, we doubted the marijuana substantially impacted the jury when they had heard evidence that Williams appeared nervous when initially speaking with officers, drug dogs alerted officers to his suitcase, his chest began heaving when officers asked about his suitcase, he admitted the suitcase was his, and officers discovered over two kilograms of cocaine inside the suitcase.[11] Given that evidence, this court found unpersuasive the claim that the jury convicted Williams based not on the above-detailed evidence, but rather on possession of a single marijuana cigarette.

Similarly, in this case, the prosecution offered considerable evidence linking the firearm to Hawley. Specifically, Miguels, an eyewitness, reported to police that he saw Hawley with a pistol when Hawley entered Miguels's apartment to use the restroom. Later, after police found Hawley with a Dremel power tool in his back pocket, an officer asked Miguels whether he might have mistaken the tool for a pistol. Miguels again reiterated he observed a pistol, not a tool. After police found the pistol in the brown bag, Miguels identified the pistol as the one he previously saw Hawley carrying. He again identified the pistol during trial, noting that the pistol had black tape around its grip. Miguels also testified that when he went to the parking lot to investigate whether Hawley remained in the area, he observed Hawley inside a truck with a brown bag. He later identified the brown bag in which the gun was found as the same brown bag he had observed in the truck with Hawley.

Moreover, the prosecution introduced additional evidence linking Hawley with the contents of the brown bag in which the pistol was found. The Dremel

---

[10] Id. at 1244.

[11] Id. at 1243.

power tool found on Hawley's person matched attachments found inside the brown bag. A cellular-phone charger found inside the brown bag matched the Motorola cellular phone Hawley carried. The prosecutor introduced DNA evidence linking Hawley to the pistol found inside the brown bag. Miguels also told police that Hawley had been wearing a shirt with a "red circle design," and a shirt fitting that description was found in the brown bag.

This case is similar to Williams. Viewing the allegedly erroneous admission in relation to the entire proceeding, there is no reasonable possibility that it contributed to the jury's conviction or that after hearing the overwhelming evidence linking Hawley to the pistol, the jury was substantially influenced by the expert witness who claimed the contents of the brown bag constituted an "auto theft kit." For these reasons, we agree with the government that even assuming, arguendo, there was error in admitting the expert's testimony, it was harmless.

## III

Hawley next challenges the district court's application of the ACCA, 18 U.S.C. § 924(e), at sentencing. Specifically, Hawley challenges the district court's determination that his 1984 California conviction for grand theft from a person in violation of section 487(2) of the California Penal Code is a violent felony under § 924(e). We review the sentencing court's findings of fact for clear error and the legal conclusions underlying the sentencing court's application of the ACCA de novo.[12]

Under § 924(e), a person with three "violent felony" convictions is subject to a fifteen-year mandatory minimum sentence for violating 18 U.S.C. § 922(g). Section 924(e) defines "violent felony" as

---

[12] United States v. Fuller, 453 F.3d 274, 278 (5th Cir. 2006); United States v. Hawkins, 69 F.3d 11, 12 (5th Cir. 1995).

> any crime punishable by imprisonment for a term exceeding one year . . . that–
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .[13]

No party in this case has alleged that subsection (i) applies, so we look to subsection (ii). Because the enumerated offenses in subsection (ii) are not at issue here, we proceed to the residual clause, also known as the "Otherwise Clause," and must determine whether a 1984 California conviction for grand theft from a person in violation of section 487(2) of the California Penal Code "involves conduct that presents a serious potential risk of physical injury to another." In applying § 924(e), we must take a "formal categorical approach," which involves "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions."[14] A prior offense is not a "violent felony" under § 924(e) if "it was possible to commit the prior offense without employing conduct that entailed a serious potential risk of physical injury."[15]

This court has never addressed whether a California conviction for grand theft from a person constitutes a violent felony under § 924(e). The Ninth

---

[13] 18 U.S.C. § 924(e)(2)(B) (emphasis added).

[14] Taylor v. United States, 495 U.S. 575, 600 (1990); see also United States v. Montgomery, 402 F.3d 482, 487 (5th Cir. 2005) ("Taylor itself addressed the enumerated offenses in Subsection (ii) and there is no reason that it should not apply—viewed through the Calderon-Pena filter—with equal force to the Otherwise Clause, which is located at the end of the enumerated list.").

[15] Montgomery, 402 F.3d at 487.

Circuit addressed this issue, however, in United States v. Wofford.[16] In Wofford, the defendant's 1979 California conviction involved the same section 487(2) California Penal Code definition of grand theft from a person that applied to Hawley's 1984 conviction.[17] The Wofford court looked to the California caselaw interpreting section 487(2) to determine that grand theft from a person was a "violent felony" under § 924(e):

> The California Penal Code defines grand theft from a person as "theft committed . . . when the property is taken from the person of another." [Since 1897,] California courts have interpreted this statute to require that "the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession . . . ."
>
>  . . . .
>
> By definition, every conviction for grand theft from a person involves direct physical contact between the perpetrator and the victim; the property must be actually attached to or carried by the victim when it is taken by the thief. The thief must not only come near his victim to commit his crime; he must reach out and touch that victim. When he confronts the victim and seizes property from the victim's person, the criminal creates a serious risk of physical injury to another; the victim might resist, or a bystander intervene, and a struggle ensue. Even though the thief might sometimes, by stealth, avoid immediate detection by his victim, he risks such a confrontation at every encounter. Viewed ex ante, the thief's conduct presents a serious potential risk of physical injury to another.[18]

---

[16] 122 F.3d 787 (9th Cir. 1997).

[17] See id. at 792.

[18] Id. at 792-93 (citing CAL. PENAL CODE § 487(2); People v. McElroy, 48 P. 718 (Cal. 1897); People v. Williams, 12 Cal. Rptr. 2d 243 (Cal. Ct. App. 1992) (quoting In re George B., 279 Cal. Rptr. 388 (Cal. Ct. App. 1991))) (internal citations omitted).

Hawley argues that we should not follow the reasoning of Wofford because the California Supreme Court recently issued an opinion, In re Jesus O.,[19] clarifying what conduct is considered grand theft from a person such that grand theft from a person does not necessarily "present a serious potential risk of physical injury to another." The Government argues that Hawley misinterprets In re Jesus O.

In re Jesus O. involved a defendant charged with grand theft from a person under section 487 of the California Penal Code.[20] Jesus O. and another juvenile, Roberto A., followed a group of juveniles from a McDonald's restaurant to a nearby alley.[21] Jesus O. and Roberto A. yelled "Assassin Kings" and then asked one of the other juveniles, Mario H., if he had any money.[22] When Mario H. said that he had no money, Jesus O. "sucker punched" one of Mario H.'s companions and a fight broke out.[23] Roberto A. pulled out a knife and threatened to "shank" Mario H., so Mario H. and his companions ran down the alley and jumped a fence.[24] At some point during the fight or escape, Mario H.'s cell phone fell out of his pocket and was lying on the ground in the alley.[25] One of Mario H.'s companions saw Roberto A. pick up the cell phone and put it in his pocket.[26]

Jesus O. was charged in juvenile court with grand theft from a person under section 487, which defines "grand theft" as "theft committed . . . [w]hen

---

[19] 152 P.3d 1100 (Cal. 2007).

[20] Id. at 1101.

[21] Id.

[22] Id.

[23] Id.

[24] Id.

[25] Id.

[26] Id.

11

the property is taken from the person of another."[27]  Jesus O. argued that his actions did not amount to grand theft from a person because the cell phone was no longer on Mario H.'s person when Roberto A. picked it up.[28]  The California Supreme Court held, however, that Jesus O. and Roberto A.'s actions constituted grand theft from a person because "the evidence shows the juvenile[s] intended to steal when the assault began."[29]  The court further explained:

> In this case, the juveniles took the telephone from Mario's person with the intent to steal, although in two steps.  First, they wrongly caused the telephone to become separated from the person; then they actually gained possession of it.  The taking began with the initial assault, when the telephone was on the person, and only ended when the juveniles picked it up from the ground.[30]

In his argument to this court, Hawley ignores this discussion.  Instead, Hawley bases his argument on the dissent in In re Jesus O., which states:

> [T]he majority expands the statutory phrase "taken from the person of another" beyond its commonsense meaning as well as its historical bounds.  Under the majority's interpretation, a grand theft from the person will occur whenever a thief "wrongly cause[s] the [stolen property] to become separated from the person" of the victim.[31]

Hawley argues that this language from the dissent means that California's grand theft from a person does not necessarily present a serious potential risk of physical injury to another because it does not require the stolen property to be "attached to or carried by the victim when it is taken by the thief."[32]

---

[27] CAL. PENAL CODE § 487(c) (2002).

[28] In re Jesus O., 152 P.3d at 1102-03.

[29] Id. at 1105.

[30] Id. at 1106.

[31] Id. at 1109 (Moreno, J., dissenting) (alterations in original).

[32] See United States v. Wofford, 122 F.3d 787, 793 (9th Cir. 1997).

Importantly, the majority in In re Jesus O. specifically responds to the dissent:

> Thus, and in response to the last paragraph of the dissent, the property was physically connected to the victim's person when the juvenile began to take it. The victim did not relinquish personal possession of the telephone voluntarily but only due to the juvenile's wrongful act. These facts pose a "threat of injury or death" to the victim just as surely as—and perhaps more than—some of the cases upholding a finding of theft from the person, and thus satisfy the rationale for making theft from the person a more serious crime than ordinary theft.[33]

Additionally, although this court has never addressed whether a California conviction for grand theft from a person constitutes a "violent felony" under § 924(e), we have held, in United States v. Hawkins, that felony theft from a person under Texas law constitutes a "crime of violence" under § 4B1.2 of the Sentencing Guidelines.[34] Section 4B1.2 of the Guidelines contains the same Otherwise Clause as § 924(e) in defining "crime of violence," and the Texas Penal Code provision discussed in Hawkins contains a similar definition for theft from a person as section 487(2) of the California Penal Code.[35] In Hawkins, we determined that theft from a person under Texas law "involves conduct that presents a serious potential risk of physical injury to another" because it "involves an inherent risk of injury to the victim."[36]

We see no reason to depart from the reasoning of Wofford or Hawkins and therefore hold that Hawley's California conviction for grand theft from a person in violation of section 487(2) of the California Penal Code is a "violent felony" as

---

[33] In re Jesus O., 152 P.3d at 1106.

[34] 69 F.3d 11, 13 (5th Cir. 1995).

[35] See TEX. PENAL CODE § 31.03(e)(4)(B) (1994) ("[A]n offense under this section is a state jail felony if, regardless of value, the property is stolen from the person of another . . . .").

[36] Hawkins, 69 F.3d at 13.

defined in 924(e)(2)(B)(ii). The district court did not err in applying the ACCA to Hawley at sentencing.

IV

For the foregoing reasons, we AFFIRM Hawley's conviction and sentence.