IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2008

Charles R. Fulbruge III
Clerk

No. 06-41760

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

GERBER WALDEMAR ORDONEZ; WILLIAM B BRADLEY; SIXTO
SANCHEZ LUGO

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Texas
U.S.D.C. No. 4:06-CR-14-3

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Gerber Waldemar Ordonez, William B. Bradley, and Sixto Sanchez Lugo
were convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846.
Ordonez was also convicted of conspiracy to distribute methamphetamine in
violation of 21 U.S.C. § 846.  They raise numerous challenges to their conspiracy
convictions and sentences.  Because the district court committed no reversible
error, we AFFIRM their convictions and sentences.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

I.

Marco Guardiola was the central figure in a large conspiracy to distribute cocaine, which he ran out of the Dallas, Texas, area. Guardiola took over the business in 2004 from his former boss, Miguel Martinez, after Martinez was killed. Guardiola received drugs from an organization based in Mexico and distributed them to various places throughout the United States. Juan Cordova was his right hand man, assisting him in distributing large amounts of cocaine.

Guardiola distributed cocaine to Chicago, Illinois to the organization's contact in Chicago he knew as "Compa" or "Compadre," and later identified as defendant Sixto Sanchez Lugo. Guardiola began transporting cocaine to Lugo in Chicago in 2004.

On trips to Chicago, Guardiola also delivered cocaine to Kevin Bell, who, in turn, delivered it to defendant William Bradley at his home in Indianapolis, Indiana. Kevin Bell also delivered cocaine directly from the Dallas area to Bradley in Indianapolis.

Guardiola also distributed cocaine in the Dallas area. He sold cocaine to Brad Holland, who sold it to defendant Gerber Ordonez. In addition to supplying Ordonez with cocaine he received from Guardiola, Holland purchased methamphetamine from Ordonez.

Guardiola was arrested in September 2004 and began cooperating with law enforcement. Many of his co-conspirators were eventually discovered by law enforcement and arrested.

II.

Lugo, Bradley, and Ordonez were indicted for conspiracy to distribute and to possess with the intent to distribute and dispense cocaine from January 1, 2004, through January 11, 2006 in violation of 21 U.S.C. § 846. Ordonez was charged with conspiracy to manufacture, distribute and dispense

methamphetamine, from January 1, 2004 through February 8, 2006, in violation of 21 U.S.C. § 846 and aiding and abetting the same, under 18 U.S.C. § 2.

After a trial, the jury found each defendant guilty of conspiracy to distribute cocaine. The jury also found Ordonez guilty of conspiracy to distribute methamphetamine.

Lugo was sentenced to imprisonment for a term of 151 months and five years of supervised release. Bradley was sentenced to 121 months of imprisonment and five years of supervised release. Ordonez was sentenced to 240 months of imprisonment and three years of supervised release for his cocaine conspiracy conviction, to be served consecutively with a sentence of 360 months of imprisonment and five years of supervised release for his methamphetamine conspiracy conviction.

### III.

### A.

Lugo challenges the sufficiency of the evidence against him. He also challenges the admission of extrinsic evidence of his 2001 detention in a Chicago airport and the admission of evidence of cocaine and drug paraphernalia found in his home, contending that the evidence was inadmissible under Federal Rule of Evidence 404(b).

### B.

Bradley also challenges the sufficiency of the evidence against him. Additionally, he challenges his sentence, contending that the district court erred by enhancing his offense level and denying an adjustment to his Guidelines range on the basis of firearms and drug paraphernalia found in his home. Bradley contends that the court erred by not applying an adjustment to his offense level because he was only a minor or minimal participant in the conspiracy. He also contends that his sentence is unreasonable and that the district court did not sufficiently explain its reasons for imposing it.

C.

Ordonez, likewise, challenges the sufficiency of the evidence against him. He also contends that the district court did not give sufficient preliminary instructions to the jury or sufficient instructions regarding the nature of the conspiracies and the testimony of co-conspirators. Ordonez also challenges the admission of evidence that he threatened the wife of a witness and the exclusion of testimony to impeach another witness's testimony regarding possession of a cell phone in jail.[1]

We now turn to address the arguments raised by the three appellants.

IV.

A.

1.

We first consider Lugo's argument that the evidence was insufficient to support his conviction. Lugo moved for judgment of acquittal, so we review the district court's denial of that motion de novo. United States v. Williams, 520 F.3d 414, 420 (5th Cir. 2008). We review the sufficiency of the evidence to determine whether, viewing the evidence in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. Id. The elements of the offense of conspiracy to distribute cocaine are (1) an agreement with one other person to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, cocaine; (2) defendant's knowledge of the agreement; and (3) defendant's voluntary participation in the conspiracy. 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); United States v. Thomas, 348 F.3d 78, 82 (5th Cir. 2003).

---

[1] Ordonez also raises arguments relating to the prosecution's opening statement and the district court's "failure" to order his counsel to move for judgment of acquittal. These arguments are meritless. Ordonez also contends that the district court erred by enhancing his Guidelines offense level on the basis of facts not found by the jury. This argument is foreclosed by circuit precedent. See United States v. Mitchell, 484 F.3d 762, 776 (5th Cir. 2007).

We hold that the evidence was sufficient to support Lugo's conviction. Lugo's co-conspirators, Guardiola and his right-hand man, Juan Cordova, testified that they personally delivered many kilograms of cocaine to Lugo on more than one occasion. They identified him in court as the man they knew as "Compa" or "Compadre." Guardiola testified that he made at least three deliveries to Lugo in Chicago, delivering between 15 and 20 kilograms of cocaine each time. Cordova testified that he went to deliver cocaine to Lugo and received payment from Lugo. Kelly Leal and Juan Guardiola, Marco Guardiola's brother, testified that they flew to Chicago in November of 2004 to hand "Compa" a cell phone so that Marco could ask him for money that was owed for a past cocaine sale. They identified Lugo as the man who came to the door when they asked for Compa and who spoke with Marco Guardiola. When Lugo was arrested, he had a phonebook containing the names Kelly, Juan, and another of Marco Guardiola's brothers.

The jury reasonably could have believed the testimony of the government's witnesses and that Lugo's repeated drug transactions with Guardiola and others evince a knowing agreement to distribute cocaine and voluntary participation in the conspiracy. We are "precluded from invading the province of the jury by substituting our credibility determinations for those of the jury unless the witness's testimony is factually impossible, which would render it incredible as a matter of law." United States v. Landerman, 109 F.3d 1053, 1067 (5th Cir. 1997). Viewing the evidence in the light most favorable to the verdict, a rational jury could have found the elements of the offense beyond a reasonable doubt.

2.

We now turn to Lugo's challenge to the admission of extrinsic evidence. We review the admission of evidence under Federal Rule of Evidence 404(b) under an abuse of discretion standard, which is necessarily heightened on review of evidentiary rulings in criminal trials. United States v. Carrillo, 981 F.2d 772,

774 (5th Cir. 1993). We follow a two-step inquiry to analyze the admissibility of Rule 404(b) evidence: "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." United States v. Mitchell, 484 F.3d 762, 774 (5th Cir. 2007) (quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)).

The Government sought to admit evidence that Lugo was detained in Chicago's Midway airport in 2001 and was discovered to have $142,000 strapped to his legs and another $1,500 in his pocket. The district court ruled before trial that the evidence was extrinsic, but admissible under Federal Rule of Evidence 404(b), finding it was relevant for purposes other than the defendant's character: "his intent among other things." The court also found that the "probative value outweighs the harm in the case." Lugo contends that the district court erred in admitting the extrinsic evidence. He contends that the extrinsic evidence of his past act was not relevant to the drug conspiracy with which he was charged.

Federal Rule of Evidence 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but may be admissible for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We have held that a defendant places his intent in issue when he pleads not guilty in a drug conspiracy case and "therefore, evidence of past drug transactions can be used to establish criminal intent." United States v. Misher, 99 F.3d 664, 670 (5th Cir. 1996).

We have further held that

> [w]here the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of

> both the extrinsic and charged offenses. The reasoning
> is that because the defendant had unlawful intent in
> the extrinsic offense, it is less likely that he had lawful
> intent in the present offense.

Beechum, 582 F.2d at 911. The extrinsic offense must require the "same intent as the charged offense" to be probative of intent to commit the charged offense. United States v. Jackson, 339 F.3d 349, 354 (5th Cir. 2003). The offenses need not be identical. We have held, for example, that conspiracy to transport stolen jewelry in interstate commerce involves the same intent as the extrinsic offense of theft, which required the defendant to intend to deprive the owner of property. Id at 354-55. Cf. United States v. Riddle, 103 F.3d 423, 433 (5th Cir. 1997) (holding that evidence of irresponsible banking practices was not relevant to show intent to commit bank fraud).

In this case, the officer who detained Lugo in 2001 testified that Lugo gave inconsistent answers to questions and that his behavior and the fact that he was traveling with a one-way, cash ticket was consistent with drug-trafficking activity. Although it is certainly likely that people with large amounts of cash hidden on their person are involved in illegal activity—indeed in drug distribution activity—Lugo was not charged with or convicted of any drug offense in connection with the 2001 seizure, and no such offense was proven to the jury. There is no evidence that Lugo's previous act required the same intent as the charged offense of conspiracy to distribute cocaine. Although the district court mentioned that the evidence was admissible to show "other things," it never stated on the record what those other things were.

Assuming that the district court abused its discretion in admitting evidence of the 2001 incident, we will reverse only if the error was not harmless. FED. R. CRIM. P. 52(a); Mitchell, 484 F.3d at 774. In a harmless error examination, we view an error in relation to the entire proceeding, not merely in isolation. United States v. Hawley, 516 F.3d 264, 268 (5th Cir. 2008). We will

reverse only if there is a reasonable possibility that the improperly admitted evidence contributed to the conviction. Id. However, "[w]hen the other evidence of guilt is overwhelming, and the error would not have substantially influenced the jury's verdict, the error is harmless." Id. Here, there was substantial other evidence that Lugo was guilty of the offense charged, discussed above. Admitting evidence of his 2001 detention did not substantially influence the jury's verdict. We conclude that any error is harmless.

Lugo also contends that the district erred by admitting evidence that approximately 62 grams of cocaine were found in a March 2006 search of his California home after the conspiracy charged in the indictment had ended. He contends that the cocaine and drug paraphernalia found in his home were not evidence of conspiracy to distribute cocaine and that the evidence was highly prejudicial. The cocaine was found along with a digital scale, cutting agent, two firearms, and a candle portraying what the agent testifying identified as the "patron saint of drug traffickers." We have held that possession of drugs is highly probative of a defendant's knowledge and intent to commit conspiracy to distribute drugs. See United States v. Duffaut, 314 F.3d 203, 209 (5th Cir. 2002); United States v. Gadison, 8 F.3d 186, 191-92 (5th Cir. 1993) (holding that "[a] prior conviction for possession of cocaine is probative of a defendant's intent when the charge is conspiracy to distribute"). The district court therefore did not err by finding that the evidence was relevant to an issue other than Lugo's character.

Moreover, it does not appear that the probative value of the evidence was outweighed by a risk of undue prejudice. The district court instructed the jury immediately after the introduction of evidence regarding the search of Lugo's home that the "testimony is being admitted only for the limited purpose of being considered by you on the question of . . . the Defendant's intent, his modus operandi or motive, opportunity, preparation and plan, and for no other

purpose." A similar instruction was given before the jury deliberated. The court's instructions to the jury diminished any undue prejudice that might have arisen from the introduction of the evidence of Lugo's cocaine possession.[2] See United States v. Taylor, 210 F.3d 311, 318 (5th Cir. 2000) ("We consistently have held that evidence of a defendant's prior conviction for a similar crime is more probative than prejudicial and that any prejudicial effect may be minimized by a proper jury instruction."). Therefore, the district court did not err in admitting the evidence.

## B.

### 1.

We now consider Bradley's challenges to his conviction and sentence. First, we consider Bradley's argument that the evidence was insufficient to support his conviction. He properly preserved this argument by making a motion for judgment of acquittal, so our review is de novo. Williams, 520 F.3d at 420. Bradley contends that the only evidence presented against him was the testimony of his co-conspirators, and that their testimony was not credible.

Kevin Bell testified that he knew Bradley from high school and began selling marijuana to Bradley beginning in 2003. Kevin Bell testified that, on four occasions in 2004, he delivered cocaine to Bradley at Bradley's Indianapolis home, in amounts ranging from five to nineteen kilograms. Kevin Bell had previously pled guilty in connection with his involvement in the conspiracy. Keith Bell, Kevin's brother, testified that he accompanied Kevin on two of these trips and witnessed Bradley giving Kevin Bell a bag of money for a delivery of cocaine. Keith Bell had not been charged in connection with the case at the time of trial.

---

[2] Lugo contends that the court's instruction did not cure any error because it simply recited the list of permissible purposes found in Rule 404(b). We have held, however, that an instruction that tracks the language of Rule 404(b) properly instructs the jury on permissible uses of extrinsic evidence. United States v. Pompa, 434 F.3d 800, 805-06 (5th Cir. 2005).

The government also introduced evidence of recorded phone calls made by Kevin Bell while he was in custody in May 2005 and January 2006. In January 2006, Kevin Bell called Bradley's half-brother, Houston Leek, and attempted to arrange a cocaine deal. According to the transcript of the calls, Leek arranged a three-way conversation with another person, whom Bell identified as Bradley. Upon his arrest in January 2006, a search of Bradley's home produced over an ounce of cocaine, digital scales, clear plastic, and four firearms.

Bradley points to some inconsistencies in the Bell brothers' testimony and some discrepancies with earlier accounts given to investigators. Bradley cross-examined the Bells regarding the discrepancies in their stories, and the jury judged their credibility. The court instructed the jury to view the unsupported testimony of co-conspirators with great care and not to convict on the basis of such testimony unless the jury believed the testimony beyond a reasonable doubt. Bradley has not demonstrated that the testimonial evidence showed a factual impossibility. We will not, therefore, second-guess the jury's credibility determinations. See Landerman, 109 F.3d at 1067. We hold that, viewing the evidence in the light most favorable to the verdict, the evidence was sufficient to support the verdict on each element of conspiracy. The district court did not err in denying Bradley's motion for judgment of acquittal.

2.

Bradley also raises several arguments concerning his sentence, which we consider in turn.

a.

First, Bradley contends that the district court erred by enhancing his base offense level by two levels according to U.S.S.G. § 2D1.1(b)(1), which provides for the enhancement "if a dangerous weapon (including a firearm) was possessed." Application note 3 to the Guideline provides that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the

weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Whether the weapon was connected with the offense is a factual finding reviewed for clear error. United States v. Cooper, 274 F.3d 230, 245 (5th Cir. 2001).

Under § 2D1.1, the government must show by a preponderance of the evidence "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." Cooper, 274 F.3d at 245 (quoting United States v. Vasquez, 161 F.3d 909, 912 (5th Cir.1998)). "Under this standard, the Government must show that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." United States v. Salado, 339 F.3d 285, 294 (5th Cir. 2003). The enhancement is appropriate if a firearm "was possessed during the course of manufacturing, importing, exporting, or trafficking in narcotics, including attempting or conspiring to do so." United States v. Dixon, 132 F.3d 192, 201-02 (5th Cir. 1997) (quoting United States v. Gaytan, 74 F.3d 545, 559 (5th Cir. 1996)). Relevant conduct may be considered, so that possession may be found even if the firearm is not possessed during the offense of conviction. United States v. Eastland, 989 F.2d 760, 769 (5th Cir. 1993). We have held, however, that it is insufficient for the Government to show merely that a drug offender is found with a gun while participating in an ongoing conspiracy. Cooper, 274 F.3d at 246. The Government must show that the firearm or the location in which it is found is connected in some way with drug-trafficking activities. Id.

Bradley contends that the Government did not demonstrate by a preponderance of the evidence a temporal and spatial relation between the weapon, the drug activity for which he was convicted, and Bradley. Bradley was arrested January 24, 2006. Therefore, Bradley argues that the guns were not found in close enough temporal proximity to the conspiracy.

11

The government presented proof that three loaded pistols and a shotgun were found in Bradley's home. One pistol was found in the kitchen where a little over an ounce of cocaine was also found. The serial number had been removed from the weapon. The two other pistols were found on shelves in Bradley's master bedroom. In the bedroom closet a shotgun was found, along with digital scales which had cocaine residue, clear plastic, baggie ties, and a plastic spoon. Seven thousand dollars in cash was found in a safe in the closet. Kevin and Keith Bell testified that Bradley's home was the location of multiple deliveries of cocaine. There was abundant evidence of a spatial relationship between the firearms and drug-trafficking activity.

Bradley contends that there is not a sufficient temporal relation connecting the search of his home in January 2006 and the last delivery made to his home in 2004. However, the government introduced evidence of a recorded telephone call between Kevin Bell, Houston Leek, and Bradley that took place on January 23, 2006. Kevin Bell testified that during that conversation, he and Bradley discussed a cocaine transaction that Bell had previously discussed with Leek, acting as a go-between to Bradley. Bradley expressed interest in distributing cocaine again on a regular basis. They discussed Bell selling Bradley and Leek five kilograms of cocaine for $18,000 per kilogram. Bradley denied that he actually made a cocaine deal with Bell, although he admitted that his voice appeared on the recorded call during which they discussed a marijuana.

We have held that firearms may be "possessed" for purposes of § 2D1.1(b)(1) in connection with a drug conspiracy even if they are found after a particular transaction in furtherance of the conspiracy. See United States v. Caicedo, 103 F.3d 410, 412 (5th Cir. 1997). In Caicedo, the defendant argued that weapons found two and a half months after cocaine was repackaged at an informant's residence were not possessed in connection with his conspiracy offense. Id. The firearms were found in close proximity to drug paraphernalia

12

with cocaine residue. Id. Because Caicedo had not withdrawn from the conspiracy, we affirmed the district court's conclusion that it was not clearly improbable that the firearms were connected with the cocaine conspiracy. Id.

Here, over a year had passed between Bell's last cocaine delivery to Bradley in 2004 and the discovery of the firearms in January 2006. However, like Caicedo, Bradley had not withdrawn from the conspiracy, which was charged in the indictment through January 11, 2006. Bradley continued to discuss a cocaine transaction with Leek and Bell as late as January 23, 2006, the day before the firearms were found. Moreover, Officer Paul Buchman, who searched Bradley's house, testified that the amount of cocaine found there along with the firearms was consistent with distribution. Because the government presented evidence that Bradley continued to engage in the cocaine distribution conspiracy up until his arrest, and because Bradley's firearms were found in close proximity to cocaine and drug paraphernalia, the district court did not clearly err in finding, by a preponderance of the evidence, a sufficient spatial and temporal nexus between the weapons, the drug activity, and Bradley to apply § 2D1.1(b)(1). Bradley has not shown that it is clearly improbable that the firearms were connected to his offense. Cooper, 274 F.3d at 246 n.8 (explaining that, once the government has established a temporal and spatial relationship between the weapon, the drug-trafficking activity, and the defendant, the burden shifts to the defendant to show that it was clearly improbable that the weapon was connected to the offense).

b.

Bradley also contends that the district court erred by not applying the "safety valve" provision of U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f). Bradley has the burden of showing that he is entitled to the safety valve adjustment to his sentence. United States v. McCrimmon, 443 F.3d 454, 457 (5th Cir. 2006). Section 5C1.2 requires proof that, among other things, Bradley did not possess

a firearm in connection with his offense. § 5C1.2(2). We have held that the firearm provision of § 5C1.2(a)(2) and the firearm provision of § 2D1.1(b)(1) should be interpreted analogously. Vasquez, 161 F.3d at 912. As discussed above, the district court did not err in finding that Bradley possessed a gun for the purposes of § 2D1.1(b)(1). It therefore did not err in not applying the safety valve provision because Bradley did not show that he did not possess a firearm in connection with the drug conspiracy offense.

c.

Bradley contends that he was a minimal or minor participant in the conspiracy and was therefore entitled to a decrease in his offense level under U.S.S.G. § 3B1.2. Section 3B1.2 requires a four-level decrease if the defendant was a minimal participant in any criminal activity and a two-level decrease if the defendant was a minor participant. A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n. 4. A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n. 5.

The defendant bears the burden of proving that his role was minor or minimal. United States v. Atanda, 60 F.3d 196, 198 (5th Cir. 1995). We review the district court's finding for clear error. United States v. Griffith, 522 F.3d 607, 611 (5th Cir. 2008). We have held that, "when a sentence is based on an activity in which a defendant was actually involved, § 3B1.2 does not require a reduction in the base offense level even though the defendant's activity in a larger conspiracy may have been minor or minimal." Atanda, 60 F.3d at 199. When a defendant in a drug conspiracy is sentenced based only on the drugs he actually participated in transporting, he cannot claim to be a minor participant in relation to his offense. United States v. Marmolejo, 106 F.3d 1213, 1217 (5th Cir. 1997).

The jury found, in connection with Bradley's conviction, that he was guilty of a conspiracy involving more than 500 grams but less than 5 kilograms of cocaine. Bradley's base offense level was assigned based on an amount of cocaine above 3.5 kilograms but less than 5 kilograms. U.S.S.G. § 2D1.1(c)(5). As discussed above, evidence was presented showing that Bradley personally participated in the distribution of well more than 3.5 kilograms of cocaine. The district court did not err in sentencing Bradley based on a quantity of drugs that, consistent with the jury's finding, the court found that Bradley had distributed. The court therefore did not err in denying Bradley an adjustment under § 3B1.2.

d.

Bradley also contends that he is entitled to resentencing because the district court failed to explain adequately his sentence.

In Rita v. United States, the Supreme Court noted that, "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." 127 S.Ct. 2456, 2468 (2007). The Court added that more than a brief statement may be required when a district court is presented with nonfrivolous arguments for a sentence outside the Guidelines. Id. at 2468-69. Nevertheless, the Court concluded that the district court's reasons for rejecting the defendant's § 3553(a) arguments for a non-Guidelines sentence in that case were, although brief, legally sufficient. Id. at 2469. Specifically, the Court noted that the record made clear that the judge listened to and considered the arguments and evidence but simply found the circumstances insufficient to warrant a sentence below the Guidelines range. Id. The judge said that the range was not "inappropriate" and that a sentence at the bottom of the range was "appropriate." Id. The Court acknowledged that the judge might have said more, but was not required to do so. Id.

Here, the district heard Bradley's arguments and objections to his sentence. The court adopted the findings, reasoning, and Guidelines calculations

in the Presentence Report. The court stated that it had considered the Sentencing Guidelines as well as the provisions of 18 U.S.C. § 3553(a). In the light of the brief statement of reasons approved in Rita, we cannot say that the district court here erred by insufficiently explaining its reasons for imposing Bradley's sentence. See United States v. Rodriguez, 523 F.3d 519, 525-26 (5th Cir. 2008).

Finally, Bradley asserts that his 121-month sentence was substantively unreasonable. This court applies a presumption of reasonableness when reviewing sentences within a properly-calculated guidelines range. See, e.g., United States v. Cisneros-Gutierrez, 517 F.3d 751, 766 (5th Cir. 2008). Bradley has not overcome that presumption.

C.

1.

We now turn to Ordonez's challenges to his conviction, first considering his contention that the evidence against him was insufficient to support the verdict.

Ordonez did not move for a judgment of acquittal. Where a defendant does not move for a judgment of acquittal, we will reverse the conviction only where it amounts to a manifest miscarriage of justice, that is, only if the record is devoid of evidence pointing to guilt. United States v. Valles, 484 F.3d 745, 752-53 (5th Cir. 2007). Here, the Government presented sufficient evidence that Ordonez was guilty of both conspiracy to distribute cocaine and conspiracy to distribute methamphetamine.

Several witnesses testified that Ordonez was involved in drug-trafficking activity with Guardiola and another conspirator, Brad Holland. Guardiola testified that Holland and Ordonez worked together to distribute cocaine, and that Holland told Guardiola that Ordonez was his source of methamphetamine. Holland testified that he participated in numerous sales of cocaine and methamphetamine with Ordonez. Jacqueline Coker, who dated Holland, testified

that she delivered money for drugs from Ordonez to Holland. Kristi Griffith, another woman Holland dated, witnessed Holland sell cocaine to Ordonez. When she was arrested, she was on the way to meet Ordonez to pick up methamphetamine. Lindsey Bell Drury and Jesse Horne, both Holland's customers, testified that, after Holland was arrested, they bought methamphetamine directly from Ordonez. Kenneth Huddleston testified that he bought methamphetamine from Holland and Ordonez.

On the basis of the substantial evidence against Ordonez, we hold that Ordonez's conviction does not amount to a manifest miscarriage of justice and that the evidence is sufficient to support his convictions for conspiracy to distribute cocaine and conspiracy to distribute methamphetamine.

2.

We next consider Ordonez's argument that the district court erred in its admission of hearsay testimony by co-conspirators and its instructions relating to that testimony. Ordonez contends that the district court erred in admitting hearsay testimony from co-conspirators who were not named in the indictment on which Ordonez was tried. He contends further that the district court did not adequately instruct the jury regarding the testimony of co-conspirators.

More specifically, Ordonez contends that the district court erred in its admission of testimony from witnesses Bradley Holland, Jacqueline Coker, Kenneth Huddleston, and Jesse Horne. He contends that hearsay evidence was improperly received because the witnesses were not specifically identified as co-conspirators by the indictment or the district court. Ordonez was charged with two conspiracies, one involving cocaine and another involving methamphetamine, and he contends that the court should have indicated to the jury which testimony went to which conspiracy. Ordonez also contends that the district court should have given cautionary or limiting instructions regarding Brad Holland's testimony, as well as that of Coker and Kristi Griffith and should have conducted

a hearing under United States v. James, 590 F.2d 575 (5th Cir. 1979) (en banc), to determine whether two conspiracies existed.

Ordonez did not make these objections at trial, so we review for plain error. Under the plain error standard, we will reverse only if (1) there is an error, (2) the error is clear under current law, and (3) the error affects the defendant's substantial rights. United States v. Garcia Abrego, 141 F.3d 142, 165 (5th Cir. 1998). When the three elements of plain error are present, relief is discretionary with the court of appeals and should be granted only when a plain error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Calverley, 37 F.3d 160, 164 (5th Cir. 1994) (en banc), abrogated in part on other grounds by Johnson v. United States, 520 U.S. 461, 468 (1997) (quoting United States v. Atkinson, 297 U.S. 157 160 (1936).

For a statement that would otherwise be hearsay to be admissible under Federal Rule of Evidence 801(d)(2)(E), "[t]here must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy.'" Bourjaily v. United States, 483 U.S. 171, 175 (1987) (quoting FED. R. EVID. 801(d)(2)(E)). When these predicate facts are challenged, the offering party must prove them by a preponderance of the evidence. Id. at 181. Here, the district court found the necessary predicate facts that there was a conspiracy involving Ordonez and that hearsay statements were made by conspirators during and in furtherance of the conspiracy. The district court did not err by waiting until the end of trial to determine the existence of the Rule 801(d)(2)(E) predicate facts, see United States v. Fragoso, 978 F.2d 896, 900 (5th Cir. 1992), and Ordonez has not shown that the district court's findings were erroneous.

In giving its preliminary instructions, the court explained the presumption of innocence, the burden of proof, the credibility of witnesses, and the privilege against self-incrimination. The indictment was read to the jury and described

two conspiracies involving different types of drugs. The district court gave appropriate cautionary instructions at the end of the trial to consider the unsupported testimony of an accomplice or co-conspirator with great care. The court further instructed that the jury should never convict a defendant on the unsupported testimony of an alleged accomplice "unless you believe that testimony beyond a reasonable doubt." The court gave detailed instructions concerning the elements of the charged conspiracies. Each witness's testimony made his or her role in the conspiracies clear, as each testified to particular instances witnessing or participating in Ordonez's transactions involving cocaine, methamphetamine, or both. In sum, Ordonez has not shown plain error in the district court's instructions to the jury.

3.

We now consider Ordonez's contention that the district court erred by admitting evidence that Ordonez threatened the wife of another witness while both were incarcerated prior to trial. Ordonez did not object at trial, so we, once again, review for plain error.

Jesse Horne testified that, approximately one week prior to trial, as Horne walked past Ordonez in the recreation area of the jail, Ordonez held up a piece of paper with Horne's address and his wife's first and last names and told Horne to "be careful." Horne testified that his wife had a different last name than he did and that he took the incident as a personal threat to his wife.

Ordonez contends that the district court erred by allowing extrinsic evidence that he made a veiled threat against Horne's wife. He contends that there was no showing that the Government complied with Rule 404(b) in disclosing the extraneous offense and the government's intention to introduce it at trial.

As discussed above regarding Lugo's appeal, evidence of extrinsic bad acts is admissible if it is relevant to an issue other than the defendant's character and

19

if its probative value is not substantially outweighed by undue prejudice. See Mitchell, 484 F.3d at 774. We have held that evidence of a threat by a defendant to an adverse witness is probative of an issue other than character: consciousness of guilt. United States v. Rocha, 916 F.2d 219, 241 (5th Cir. 1990). Such evidence indicates "that the defendant was conscious of the weakness of his case [and] creates a compelling inference that the defendant's case lacks merit." Id. Therefore, evidence of Ordonez's threat is probative of an issue other than character. Ordonez does not argue that the evidence is more prejudicial than probative. He has not demonstrated that the district court committed plain error in admitting evidence of his threat to Horne.

4.

Finally, we address Ordonez's argument that the court erred in not allowing him to call a witness to impeach Brad Holland's testimony concerning a collateral matter.

Holland testified on cross-examination that he sneaked a cell phone into the Red River County Jail, in violation of jail rules. Holland testified that someone else brought the phone to the jail and that they were responsible for it, but that he sneaked the phone in. He admitted that doing so was against the rules. Ordonez sought to introduce the testimony of Robert Strucker, another prisoner who was nearby when the contraband phone was brought into the jail facility. Ordonez sought to show through Strucker's testimony that Holland was entirely responsible for the phone and that he attempted to put the blame on Strucker and Strucker's fiancée. The district court held a hearing on the issue, and found that, under Federal Rule of Evidence 403, the probative value was less than the other considerations in conducting a trial and, alternatively, that the evidence was impeachment on a collateral matter.

We review properly preserved evidentiary rulings for abuse of discretion. United States v. Miller, 520 F.3d 504, 510 (5th Cir. 2008). Rule 403 provides that

relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

At most, the proffered testimony would have been evidence that Holland's testimony had not appropriately allocated responsibility for a violation of jail rules to which he admitted. The district court's finding that this evidence was not of sufficient probative value to merit inclusion in the trial was not an abuse of discretion.

V.

For the foregoing reasons, we hold that the district court committed no reversible error in the conviction and sentencing of Sixto Sanchez Lugo, William Bradley, or Gerber Ordonez for conspiracy to distribute cocaine under 21 U.S.C. § 846 or of Ordonez for conspiracy to distribute methamphetamine under 21 U.S.C. § 846. Their convictions and sentences are therefore

AFFIRMED.