# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 9, 2011

No. 10-40300

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIRIAM CASTILLO-CORPUS,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:08-CR-1680

---

Before SMITH, DeMOSS, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Miriam Castillo-Corpus appeals the determination that she is ineligible
for the safety-valve reduction under U.S.S.G. § 5C1.2(2) because she construc-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-40300

tively possessed a firearm.  We find no error and affirm.

I.

A confidential informant contacted United States Immigration and Customs Enforcement officers and told them that Castillo-Corpus's residence, a modified trailer house, was being used as a "stash house" for illegal drugs.  The government had seized sixty-seven pounds of marihuana from her residence just a few months before and knew that her ex-husband and former boyfriend were involved in drug trafficking and money laundering.  In addition, the body of Castillo-Corpus's close male friend was found riddled with bullets and stab wounds.

While on surveillance outside a warehouse, agents saw Castillo-Corpus drive past them along with a male whom Castillo-Corpus later identified as her cousin "Chaparro."  The agents then drove past Castillo-Corpus's house, where they observed her pouring liquid bleach onto the front porch and driveway.  The agents returned there afterward, but she had left.  The agents then drove to a known relative's residence, where they found her.

Castillo-Corpus "broke down" and admitted that marihuana was stored at her trailer house and that she was present when it was unloaded.  She also told officers that there was a firearm in her living room and that it was loaded.  She claimed that the weapon belonged to Chaparro, however.

Officers obtained and executed a search warrant on the house, where they found a loaded .380 firearm on a chair in plain view by a table in the living room.  The living room was located between two bedrooms in which officers found a combined 149 bricks of marihuana weighing about 3,278 pounds.

Castillo-Corpus was charged with aiding and abetting the possession with intent to distribute of more than 1000 kilograms of marihuana in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  She pleaded guilty.  In exchange, the government agreed to recommend a two-level reduction for accep-

No. 10-40300

tance of responsibility under U.S.S.G. § 3E1.1(a).

II.

The district court found that Castillo-Corpus merited a sentence of 70-87 months under the sentencing guidelines, but it sentenced her to the mandatory minimum of 120 months. Castillo-Corpus sought a sentence below the mandatory minimum pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2's safety-valve provision, but the government argued that she was ineligible for the reduction because she possessed the firearm found in her house. Castillo-Corpus argued that the firearm belonged to Chaparro, not her, that Chaparro left it inside her house before the two of them departed, and that she never re-entered the house or otherwise had access to the weapon.

The court found that Castillo-Corpus constructively possessed the firearm in connection with her offense. It noted that the firearm was in the "heart" of her house. She knew "massive quantities" of marihuana were being stored there. She was the "stash house operator." She was observed pouring bleach outside the house before she was apprehended. And she told the officers about the firearm and was knowingly present in the house when the gun and marihuana were there. Accordingly, the court held that Castillo-Corpus was ineligible for the § 5C1.2 safety-valve reduction.

III.

We review a legal interpretation of § 5C1.2 *de novo*[1] and a sentencing court's application of § 5C1.2 to the facts of the case for clear error. *Flanagan*, 80 F.3d at 145 (citing *Rodriguez*, 60 F.3d at 195 n.1). For a factual finding not

---

[1] *United States v. Flanagan*, 80 F.3d 143, 145 (5th Cir. 2006); *see United States v. Rodriguez*, 60 F.3d 193, 195 n.1 (5th Cir. 1995) ("We review the legal interpretation of the Sentencing Guidelines de novo.").

No. 10-40300

to be clear error, it need only be "plausible in light of the record as a whole." *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011).

Title 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 provide that the mandatory minimum sentence shall not apply if the defendant satisfies certain require-ments, one of which is that he "did not . . . possess a firearm . . . in connection with the offense." Castillo-Corpus argues that she did not constructively possess the firearm found in her house because it belonged to Chaparro and she had no "realistic access" to it. The defendant bears the burden of proving by a prepon-derance of the evidence that she did not possess the firearm for § 5C1.2 purpos-es. *United States v. Vasquez*, 161 F.3d 909, 912 (5th Cir. 1998).

There is a tension in our caselaw with respect to the appropriate legal standard to apply to determine constructive possession under § 5C1.2. Some of our decisions imply that, as with § 2D1.1(b)(1) of the sentencing guidelines, a de-fendant constructively possesses a firearm under § 5C1.2 if there is a "temporal and spatial relation . . . between the weapon, the drug trafficking activity, and the defendant" and it is not "clearly improbable that the firearm[] [was] connect-ed to his offense."[2] We have also found constructive possession under § 5C1.2(2)

---

[2] *See United States v. Ordonez*, 286 F. App'x 224, 233-34 (5th Cir. 2008) (per curiam) (affirming the district court's refusal to apply the § 5C1.2 safety valve, because it "did not err in finding that [the defendant] possessed a gun for the purposes of § 2D1.1(b)(1)"); *United States v. Martinez*, 111 F. App'x 341, 342 (5th Cir. 2004) (per curiam) (same); *United States v. Sanchez-Vasquez*, 70 F. App'x 187, 188-89 (5th Cir. 2003) (per curiam) (interpreting § 2D1.1-(b)(1) and § 5C1.2(2) analogously to hold that the defendant constructively possessed a fire-arm); *Vasquez*, 161 F.3d at 911-13 (per curiam) (holding that, "despite any difference in se-mantics between § 2D1.1(b)(1) and § 5C1.2(2)," § 5C1.2(2)'s "in connection with the offense" requirement should be interpreted "analogously" to § 2D1.1(b)(1)'s "possession" language, but leaving open the possibility that § 5C1.2 and § 2D1.1 should not be interpreted the same for all purposes, "including whether another's actions can be attributed to the defendant"); *United States v. Myers*, 150 F.3d 459, 465 (5th Cir. 1998) ("The district court . . . [found] that Myers knew about, and possessed, the rifle in the course of the conspiracy. We therefore affirm the two-level firearm enhancement [under § 2D1.1(b)(1)] and *necessarily* affirm the district court's finding that Myers was not eligible for the 'safety valve' provision of U.S.S.G. § 5C1.2(2)." (em-phasis added)); *United States v. Flucas*, 99 F.3d 177, 178-79 (5th Cir. 1996) (per curiam) ("Flu-
(continued...)

4

No. 10-40300

by relying on language from our cases involving standalone possession offenses, *viz.* whether the defendant has "ownership, dominion or control over the [firearm] . . . or dominion or control over the premises in which the [firearm] is concealed."[3]  We have never determined whether our holdings with respect to the legal standard for joint constructive possession of a weapon applicable to standalone possession offenses also apply to § 5C1.2(2).[4]  Because neither the district court nor the parties addressed that strain in the jurisprudence, however, and because Castillo-Corpus possessed a firearm regardless of which standard we apply, we decline to resolve the issue, even if, as a panel, we had the authority to do so.  The district court's finding that Castillo-Corpus possessed a firearm in connection with her offense is plausible and therefore not clear error.

Constructive possession "need not be exclusive[;] it may be joint with others." *United States v. Fambro*, 526 F.3d 836, 839 (5th Cir. 2008).  The gun was found in plain view in the living room of Castillo-Corpus's house, outside of which officers saw her pouring bleach onto her porch and driveway when it appears no one else was there.  Based on her testimony to officers after she "broke down," Castillo-Corpus not only knew that the firearm was in the house

---

[2] (...continued)
cas argues that it was error to adjust his sentence by two levels for possession of a firearm [pursuant to § 2D1.1(b)(1)].  The finding that Flucas possessed a weapon is also significant because it disqualified Flucas from being eligible for the 'safety valve' provision . . . .").

[3] *See United States v. Matias*, 465 F.3d 169, 173 (5th Cir. 2006) (quoting *United States v. Fields*, 72 F.3d 1200, 1212 (5th Cir. 1996)).

[4] For example, we have held that, under 18 U.S.C. § 922(g)(1), when "two or more persons jointly occupy the place where a firearm is found, mere control or dominion of that place is, by itself, insufficient to establish constructive possession." *Fields*, 72 F.3d at 1212.  If there is joint occupancy, the prosecution must show "access to and knowledge" of the weapon. *Id.* *But cf. Sanchez-Vasquez*, 70 F. App'x at 188-89 (holding that, under U.S.S.G. § 2D1.1(b)(1), "'neither the sentencing guidelines nor the case law requires that the Government prove a defendant had knowledge of a weapon's existence'" and concluding that because the defendant possessed a weapon under § 2D1.1(b)(1), he possessed a weapon under § 5C1.2(2) (quoting *Flucas*, 99 F.3d at 179)).

but knew it was loaded.  Her argument that the gun belonged to Chaparro and that she never had access to it is nothing more than that: an argument; the only evidence to support it is her self-serving testimony.  Therefore, the district court did not clearly err in finding that Castillo-Corpus failed to prove by a preponderance of the evidence that she did not possess the weapon.  The judgment of conviction is AFFIRMED.