# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 12, 2012

Lyle W. Cayce
Clerk

No. 10-41270

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO VASQUEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

ON PETITION FOR REHEARING

Before REAVLEY, ELROD and GRAVES, Circuit Judges.

PER CURIAM:

Appellants' Petition for Panel Rehearing is DENIED. We withdraw the prior panel opinion, issued on January 13, 2012, and substitute the following.

A jury convicted defendant-appellant, Pedro Vasquez of (1) possessing with intent to distribute over five kilograms of cocaine, (2) importing cocaine into the United States, and (3) conspiring to possess with intent to distribute over five kilograms of cocaine. Vasquez appeals all three convictions and his sentence of three concurrent 125-month terms. We AFFIRM.

No. 10-41270

**Facts and Procedural History**

On May 25, 2010, United States Customs and Border Patrol ("CBP") Antiterrorist Contraband Enforcement Team ("ATCET") Officer Analia Natividad Salazar selected Vasquez's Chevrolet Suburban, based on trend analysis, for inspection at the Lincoln-Juarez Bridge Number 2, in Laredo, Texas, approximately 4.5 kilometers from Nuevo Laredo, Mexico.   This CBP ATCET stop occurred at 11:55 a.m. in Laredo, Texas.  Several CBP personnel were present at and participated in the stop at the federal inspection area ("FIA"), including but not limited to Officer José (Joe) Gonzalez.  Officer Salazar testified that she found it unusual that Vasquez drove the vehicle at "an extremely slow pace" after he passed the primary inspection, and was "very alert to his surroundings . . . pretty much looking forwards, sideways, backwards . . . ."  Officer Salazar further testified that Vasquez was constantly fidgeting his hands when other CBP officers were inspecting the Suburban, and his eyes were concentrated on the Suburban, particularly when officers inspected the hood area.  Officer Salazar noticed that when they inspected the hood area, Vasquez "was a bit anxious of wanting to see what was being done and also wanting to get near . . . ."  Officer Salazar testified that when she asked him why he was entering the United States, Vasquez said he had attended an alcoholics' anonymous meeting in Nuevo Laredo, Mexico, and he was returning to work at Cristalina Pools, a pool construction company in Laredo, Texas.

Rolando Villalobos, the owner of Cristalina Pools, testified that Vasquez had worked for him for about two-and-a-half years.  Villalobos further testified that Vasquez would typically cross from Nuevo Laredo, Mexico, on foot every morning, where he would then be picked up by other Cristalina Pools employees.  As far as Villalobos knew, Vasquez did not own a car.  On several occasions, Villalobos permitted Vasquez to leave work early in order to attend meetings in Nuevo Laredo, Mexico.  Villalobos testified that he knew nothing about the

No. 10-41270

meetings except that Vasquez told him they were for alcohol-addiction treatment. Shortly before May 25, 2010, Vasquez asked Villalobos for some time off to try and make some money towing vehicles. Villalobos granted the request.

Officer Gonzalez testified that he was among the CBP personnel who inspected the Suburban. He further testified that the inspection revealed what appeared to be two car batteries in the engine compartment. Gonzalez also testified that this was unusual, because Vasquez's Suburban is a gasoline vehicle that needs only one battery. Gonzalez went on to testify that he and other officers disassembled the batteries' casings. They discovered that each car-battery casing was lined with lead sheeting and that each contained a motorcycle battery and three shrink-wrapped bundles of cocaine. The six bundles of cocaine had a total weight of 10.25 kilograms. The motorcycle batteries were connected to the Suburban's electrical system. Gonzalez testified that tools, a hitch, and some chains in a bucket were found in the back of the Suburban. CBP officers found another set of tools (a 1/2-inch wrench, a 7/16-inch wrench and 2 pliers) behind the driver's seat on the floor. The sizes of the wrenches and pliers fit the terminals on the motorcycle batteries. However, Gonzalez testified that wrenches and pliers of that size are extremely common.

United States Department of Homeland Security Immigration and Customs Enforcement ("ICE") Special Agent Owen William Tims – the lead investigator and case agent, as well as the duty agent on May 25, 2010 – testified that he interviewed Vasquez at 1:20 p.m. on the bridge with the assistance of two Spanish-speaking officers. He further testified that Vasquez was visibly nervous. Special Agent Tims also testified that Vasquez initially denied ownership of the car, but shortly changed his answer and admitted to owning it. He went on to testify that Vasquez became more nervous at that point, his hands and his mouth began quivering, and he started shifting frequently in his seat. Vasquez's counsel attempted to elicit testimony from

3

No. 10-41270

Special Agent Tims regarding Vasquez's other statements during the interview, but the district court sustained the prosecutor's hearsay objection. Special Agent Tims entered the information that he obtained from his interview of Vasquez in an ICE C-CATS report.

CBP Officers Blanca De Leon and Maria Villarreal interviewed Vasquez again in Spanish and wrote an I-213 Record of Deportable Alien immigration report in English. Neither Officer De Leon nor Villarreal testified at trial. Vasquez's attorney attempted to question Special Agent Tims about the report. The government objected that Special Agent Tims could not testify to a report that someone else authored. The district court sustained the government's objection.

ICE agents and CBP officers had discovered a sales contract in the Suburban. Javier Niera, of J&R Auto Sales, in Laredo, Texas, properly authenticated the sales contract and testified that he sold the Suburban to Vasquez in working order, with a single car battery. However, Niera testified that the Suburban's air conditioning system was leaking and would work for only two or three days before it needed more freon. Niera testified that another man[1] accompanied Vasquez when the Suburban was purchased. Niera had previously seen the other man at the car lot. The man had previously purchased at least four other vehicles, and during a previous visit, he had looked over the Suburban. Niera testified that the man did all the talking and paid for the Suburban, although only Vasquez signed the sales contract. Niera also testified that the other man asked Niera to leave the Suburban's old plates on it, but Niera refused because Texas law requires dealers to remove and destroy plates registered in the name of a vehicle's previous owner.

---

[1] During oral argument, Vasquez's attorney represented that Timoteo – whose last name is unknown to both Vasquez and the government – purchased, in cash, the 1997 Chevrolet Suburban on or about May 14, 2010 in Vasquez's name only.

No. 10-41270

Corey Grubbs, an ICE Special Agent, as well as Dr. Xiu Liu, Ph.D., a forensic chemist with the United States Drug Enforcement Agency ("DEA"), testified that 10.25 kilograms of cocaine had a street-value between $111,875 and $138,375 in Nuevo Laredo, Mexico; between $148,625 and $179,375 in Laredo, Texas; between $225,500 and $266,500 in San Antonio, Texas; and between $266,500 and $287,000 in Austin, Texas.

## Standards of Review

### I.     Sufficiency of the Evidence

Vasquez moved for a judgment of acquittal at the close of the government's case-in-chief and again after the close of the evidence.  This court reviews the district court's denial of a motion for acquittal *de novo*.  *United States v. Campbell*, 52 F.3d 521, 522 (5th Cir. 1995).  A motion for acquittal should be granted if the government fails to present evidence sufficient for a reasonable jury to have found that each essential element of the offense was established beyond a reasonable doubt.  *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998).  This court considers the evidence in the light most favorable to the government, with all reasonable inferences and credibility determinations made in the government's favor.  *United States v. Santillana*, 604 F.3d 192, 195 (5th Cir. 2010).  "*The jury may choose among reasonable constructions of the evidence: The evidence need not exclude every reasonable hypothesis of innocence* or be wholly inconsistent with every conclusion except that of guilt."  *Id.* (citing *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996) (emphasis supplied)).  "'*[C]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation*, especially when corroborated by moral coincidences, *be sufficient to constitute conclusive proof*.'"  *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989) (quoting *Coggeshall v. United States* (*The Slavers*), 69 U.S. (2 Wall.) 383, 17 L. Ed. 911, 914-15 (1865) (emphasis supplied)).  Jurors may properly "'use their common sense'" and "'evaluate the facts in light of their

No. 10-41270

common knowledge of the natural tendencies and inclinations of human beings'." *Ayala*, 887 F.2d at 67 (quoting *United States v. Henry*, 849 F.2d 1534, 1537 (5th Cir. 1988)).

## II. Jury Instructions

Generally, this court reviews jury instructions for abuse of discretion and harmless error. *United States v. Betancourt*, 586 F.3d 303, 305 (5th Cir. 2009). However, when a defendant fails to object to jury instructions, we review for plain error:

> A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. An opportunity must be given to object out of the jury's hearing and, on request, out of the jury's presence. Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).

Fed. R.Crim. P. 30(d). Reversal is justified under the plain error standard if the jury instruction was (1) an error, that was (2) plain, that (3) affected the defendant's substantial rights, and (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 1548-49 (1997). "The standard of review of a defendant's claim that a jury charge was inappropriate is 'whether the court's charge, as a whole, is a correct statement of the law *and* whether it clearly instructs jurors as to the principles of law *applicable to the factual issues confronting them.*'" *United States v. Lara-Velasquez*, 919 F.2d 946, 950 (5th Cir. 1990) (quoting *United States v. Stacey*, 896 F.2d 75, 77 (5th Cir. 1990)) (emphasis added in *Lara-Velasquez*). The court's charge "not only must be legally accurate, *but also factually supportable*; the court 'may not instruct the jury on a charge that is not supported by evidence.'" *Id.* (quoting *United States v. Ortega*, 859 F.2d 327, 330 (5th Cir. 1988) (emphasis supplied).

No. 10-41270

### III.   Prosecutorial Statements

Where a defendant timely objects to prosecutorial statements, we review for abuse of discretion. *United States v. Stephens*, 571 F.3d 401, 407 (5th Cir. 2009). However, because Vasquez did not object at trial to the statements at issue here, we review for plain error. *United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009).

### IV.   Sentencing

Following *United States v. Booker*, 543 U.S. 220, which rendered the Sentencing Guidelines advisory, we review sentences for reasonableness. *United States v. Gall*, 552 U.S. 38, 46 (2007). "This review occurs in two stages. First, the court must ensure that the district court did not err procedurally by, for example, miscalculating or failing to calculate the sentencing range under the Guidelines." *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009). "The district court's interpretation or application of the Sentencing Guidelines is reviewed *de novo*, while its factual findings are reviewed for clear error." *United States v. Lige*, 635 F.3d 668, 670 (5th Cir. 2011). "If the sentence is procedurally proper, the court engages in a substantive review based on the totality of the circumstances" under an abuse of discretion standard. *Mondragon-Santiago*, 564 F.3d at 360. "[A] sentence within the Guidelines range is presumed reasonable on appeal." *Id.*

Here, however, we review Vasquez's sentence only for plain error because at sentencing he did not specifically object to the court's explanation of his sentence or that the sentence was excessive. *See id.* at 361.

### Analysis

### I.   Whether sufficient evidence existed to support Vasquez's conviction?

### A.   Count One: Conspiracy

To establish a drug conspiracy, "the government must prove:   1) the

existence of an agreement between two or more persons to violate federal narcotics laws; 2) the defendant's knowledge of the agreement; and 3) the defendant's voluntary participation in the agreement." *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir. 1996). "[A] defendant may be convicted of conspiring with other unknown persons if the indictment asserts that other such persons exist and the evidence supports their existence and the existence of a conspiracy." *United States v. Hernandez-Palacios*, 838 F.2d 1346, 1348-49 (5th Cir. 1988). During closing argument, the government stated that "this case was primarily one of circumstantial evidence . . ."

The government presented evidence[2] that revealed several facts, which standing alone are insufficient, but together, support the jury's guilty verdict on the conspiracy count. In particular, the government argues persuasively that the conspiracy conviction is supported by the "large and valuable quantity of cocaine,"[3] the installation of the Suburban's two false car-battery casings, and Niera's testimony about the man who bought the Suburban for Vasquez. ICE Agent Grubbs and the government's expert, Dr. Liu with the DEA testified that the street value of the cocaine was $111,875, at a minimum, in Nuevo Laredo, Mexico and as much as $287,000 on the upper end in Austin, Texas. Indeed, both Dr. Liu and ICE Agent Grubbs expressed opinions concerning the cocaine

---

[2] This court makes clear that the government's evidence in the present instance was both circumstantial and cumulative, which supports the inference(s) that can be drawn in order for the jury to declare Vasquez guilty of conspiracy.

[3] The jury may consider the amount of the contraband seized "which . . . is enough to justify the inference that more than one person must be involved in moving it towards its ultimate dispersal." *United States v. Barnard*, 553 F.2d 389, 393 (5th Cir. 1977); *see also United States v. Gutierrez-Farias*, 294 F.3d 657, 661 (5th Cir. 2002) ("To begin, the jury could have inferred from the large quantity and value of marijuana, and the difficulty of secreting it in the tires, that others were involved in the scheme."); *United States v. Hawkins*, 547 F.3d 66, 72 (2d Cir. 2008); *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005); *United States v. Howard*, 966 F.2d 1362, 1364 (10th Cir. 1992) ("The huge quantity of crack cocaine involved in this case permits an inference of conspiracy, but by itself this is not enough to convict defendant.") .

– specifically, its weight and value, which the jury took into consideration.

This court must credit all of this evidence, because the "court will not substitute its own determination of credibility for that of the jury . . ." *United States v. Casilla*, 20 F.3d 600, 602 (5th Cir. 1994). While "[i]t takes at least two to tango for conspiracy purposes[,]" *United States v. Morgan*, 835 F.2d 79, 82 (5th Cir. 1987), the government is not required to identify each of the co-conspirators by name. *See, e.g.*, *United States v. Lance*, 536 F.2d 1065, 1068 (5th Cir. 1976). Here, there is more than ample evidence. Vasquez's challenge to the sufficiency of the evidence on the conspiracy count fails.

## B.    Count Two: Possession with the Intent To Distribute

The offense of possession with the intent to distribute requires proof of (1) possession, (2) knowledge, and (3) intent to distribute. *United States v. Garcia*, 567 F.3d 721, 731 (5th Cir. 2009). Vasquez challenges only the knowledge element. "The knowledge element in a possession case can be inferred from control of the vehicle in some cases; when the drugs are hidden, however, control alone is not sufficient to prove knowledge." *United States v. Pennington*, 20 F.3d 593, 598 (5th Cir. 1994). "When the drugs are secreted in hidden compartments . . . this Court has normally required additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge." *Ortega Reyna*, 148 F.3d at 544 (internal quotation marks omitted). We have previously recognized that circumstantial evidence of guilty knowledge includes, *inter alia*, the following types of behavior: nervousness, refusal or reluctance to answer questions, inconsistent statements, and obvious or remarkable alterations to the vehicle. *Id.* The high value of concealed narcotics can also support knowledge. *United States v. Villareal*, 324 F.3d 319, 324 (5th Cir. 2003).

Here, there was sufficient additional circumstantial evidence for a reasonable jury to infer Vasquez's knowledge of the cocaine. Officer Salazar testified that after passing inspection Vasquez drove unusually slowly and was

highly alert. She testified that Vasquez was nervous when the Suburban was inspected. Officer Tims testified that Vasquez exhibited nervousness when questioned, and that he initially denied, but then admitted, owning the vehicle. ICE Special Agent Grubbs testified that the cocaine found in Vasquez's vehicle was worth approximately $125,000 in Nuevo Laredo, Mexico, and $275,000 in Austin, Texas. Officer Gonzalez testified that when running on the motorcycle batteries, the Suburban could not draw enough power to run its headlights or air conditioner without burning out the batteries and alternator. A reasonable jury could have inferred from this that the reason Vasquez never used the headlights or air conditioner[4] during the twelve days he had the vehicle was because he was aware of the limitations of the Suburban's modified electrical system.

## C.    Count Three: Importation of Cocaine into the United States

To prove the offense of importing narcotics into the United States, the government must prove the elements of the possession offense, as well as that Vasquez played a role in transporting the cocaine from Mexico into the United States. *United States v. Cardenas*, 9 F.3d 1139, 1158 (5th Cir. 1993). Vasquez again challenges the sufficiency of the evidence only with respect to the knowledge element. For the same reasons as count two, a reasonable jury could infer Vasquez's guilty knowledge from the circumstantial evidence admitted at trial.

## II.    Whether the district court properly instructed the jury?

## A.    The Aiding and Abetting Instruction

Vasquez argues that the aiding and abetting jury charge was improper because there was no evidence of any person whom he could have aided and abetted. The offense of aiding and abetting requires proof that Vasquez: "(1) associated with a criminal venture; (2) participated in the venture; and (3)

---

[4] We note that the average May temperature in Laredo, Texas is 95°F.

sought by action to make the venture successful." *Garcia*, 567 F.3d at 731. Because Vasquez objected to the district court's aiding and abetting charge, our review is for abuse of discretion. *Betancourt*, 586 F.3d at 305.

The district court did not abuse its discretion in instructing the jury on aiding and abetting. "'Typically, the same evidence will support both a conspiracy and an aiding and abetting conviction.'" *United States v. Rodriguez*, 553 F.3d 380, 391 (5th Cir. 2008) (quoting *United States v. Singh*, 922 F.2d 1169, 1173 (5th Cir. 1991). Here, the jury could have inferred that others were involved in Vasquez's criminal venture from the same evidence that was sufficient to support his conspiracy conviction, as discussed above.

**B.    The Deliberate Ignorance Instruction**

If a deliberate ignorance instruction is given, a "balancing" instruction should be considered upon request of defendant. *See United States v. Farfan-Carreon*, 935 F.2d 678, 681 n.5 (5th Cir. 1991). In the present instance, Vasquez neither objected to the deliberate ignorance instruction, nor did he request a balancing instruction, hence, the plain error standard. *See Betancourt*, 586 F.3d at 305-06. The district court read into the record, word-for-word, this court's pattern jury instruction on deliberate ignorance:

> The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident. You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

*Fifth Circuit Pattern Jury Instructions: Criminal* § 1.37.

The deliberate ignorance instruction "does not lessen the government's burden to show, beyond a reasonable doubt, that the knowledge elements of the

crimes have been satisfied." *United States v. Reveles*, 190 F.3d 678, 686 n.12 (5th Cir. 1999); *see United States v. Ojebode*, 957 F.2d 1218, 1229 (5th Cir. 1992) (this court warned that a deliberate ignorance instruction "should rarely be given" because it creates the risk that a jury may convict on a lesser negligence standard); *see also United States v. Newell*, 315 F.3d 510, 528 (5th Cir. 2002) (the essence of deliberate ignorance is "'Don't tell me, I don't want to know.'") (quoting *Lara-Velasquez*, 919 F.2d at 951); *cf. Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060 (2011) (analyzing deliberate ignorance's civil equivalent, willful blindness).  A judge is cautioned that, in instructing on a statute which punishes "otherwise innocent conduct," the knowledge requirement applies to each element. *United States v. Ahmad*, 101 F.3d 386, 390 (5th Cir. 1996), *reh'g and suggestion for reh'g en banc denied*, 108 F.3d 335 (5th Cir. 1997).  Fifth Circuit precedent requires that a district court give a deliberate ignorance instruction "when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference." *United States v. Threadgill*, 172 F.3d 357, 368 (5th Cir. 1999).

Vasquez, through his attorney, stated before the district court and argued on appeal to this court that he did not know about the cocaine.  In particular, Vasquez's attorney stated, during his opening statement that:

> [T]he government agents found cocaine hidden in the batteries. The other thing, as [the government] told you-all, it was hidden and concealed. You couldn't see the stuff.  You couldn't see the cocaine or anything or anything unusual by looking at -- under the hood.  All you could see were batteries.  She talked about how they were motorcycle batteries.  The motorcycle batteries were concealed within a shell of larger batteries.  So anyone looking at them would see nothing but larger batteries.  So there's nothing unusual about the way the car looked, nothing unusual about the way the car operated.

Vasquez's attorney also stated at the beginning of his closing argument:

> And the court has read you the instructions, and the instructions say the government may not rely upon the defendant's ownership and control of

the vehicle to prove the defendant knew he possessed the controlled substance. In other words, they can't just show you that Pedro Vasquez owned the vehicle. They can't just show you that Pedro Vasquez was driving the vehicle. They have to bring you other evidence, other evidence to show beyond a reasonable doubt that he knew.

A reasonable doubt, we talked about in jury selection, is the kind of doubt that would make you, you hesitate in the most important of your own affairs. There is reasonable doubt in this case, and there's reasonable doubt because Pedro Vasquez is innocent. That's why there's doubt. And that's why there's no evidence of his knowledge because the evidence doesn't exist because he's innocent.

The trigger for deliberate ignorance is that the evidence at trial must raise two inferences: that the defendant (1) was subjectively aware of a high probability of the existence of the illegal conduct, and (2) purposely contrived to avoid learning of the illegal conduct. *United States v. Mendoza-Medina*, 346 F.3d 121, 132-33 (5th Cir. 2003); *see also United States v. Cavin*, 39 F.3d 1299, 1310 (5th Cir. 1994). The essential feature of deliberate ignorance "is the *conscious* action of the defendant — the defendant *consciously* attempted to escape confirmation of conditions or events he strongly suspected to exist." *Mendoza-Medina*, 346 F.3d at 133 (quoting *Lara-Velasquez*, 919 F.2d at 951).

Here, Vasquez contends that not only was the deliberate ignorance instruction not supported by the evidence, but also that it was deficient because it omits the requirement that a defendant possessed "subjective awareness of a high probability of the existence of illegal conduct." *Threadgill*, 172 F.3d at 368. In other words, Vasquez argues that the evidence at trial was insufficient to support the deliberate ignorance instruction, and he asserts that the deliberate ignorance instruction incorrectly stated the law. Vasquez is wrong.

The evidence demonstrates that Vasquez owned and controlled the Suburban, which some unknown buyer purchased. Vasquez drove extremely slowly, and then had a nervous demeanor when CBP officers and ICE agents

questioned him.  Vasquez's Suburban, which requires only a single battery, had two car batteries under its hood.  Moreover, the car dealer testified that the Suburban required changing the freon every two to three days in order to operate the air-conditioning, thus necessitating a check under the hood.  Likewise, the photographs demonstrate how the batteries were loaded with cocaine.  Finally, Vasquez's employer testified regarding Vasquez's coincidental leave of absence from Cristalina Pools.  We do note that neither the government nor the defendant requested that a deliberate ignorance instruction be given, but nonetheless, the district court's instruction was supported by the evidence at trial and was a correct statement of the law.

## III. Whether the prosecution's closing argument was improper?

Vasquez next argues that he was deprived of his right to a fair trial by prosecutorial statements that, he asserts, were improper.  Vasquez's "fairness argument implicates due process. For a denial of constitutional due process, the prosecution's [improper statements] must so infect the trial as to substantially affect the fairness of the proceeding." *Vargas*, 580 F.3d at 277–78.  To establish reversible error, Vasquez must show that (1) "the prosecutor made an improper remark; and (2) "the defendant was prejudiced."  *Stephens*, 571 F.3d at 408 (internal quotation marks omitted).  "In determining whether a prosecutor's comment was improper, it is necessary to look at the comment in context." *United States v. Insaulgarat*, 378 F.3d 456, 461 (5th Cir. 2004).  To show prejudice, Vasquez must demonstrate that the remarks affected the outcome of his trial.  *See United States v. McCann*, 613 F.3d 486, 496 (5th Cir. 2010).  This inquiry requires us to assess "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *United States v. Munoz*, 150 F.3d 401, 415 (5th Cir. 1998).  Moreover, our review here is only for plain error because Vasquez did not object at trial.

No. 10-41270

Vasquez argues that two distinct comments during the prosecution's closing argument were improper. First, Vasquez argues that the prosecution improperly argued that Vasquez did not make any statements of consequence to law enforcement on the day of his arrest when, in fact, Vasquez had repeatedly protested his innocence. During closing argument, the prosecutor stated: "[T]he investigation did not stop there. Did the agents talk to him? Yes. *Though one may infer that much didn't come out of it.* You heard his behavior. His actions. His inconsistencies." (emphasis added). According to Vasquez, this statement wrongly suggested to the jury that he never offered an innocent explanation of his conduct to law enforcement and invited the jury to infer guilt from the absence of such an explanation. However, read in context, the statement can just as easily be understood as a reference to his evasive answers about his ownership of the Suburban. We have previously held that where a prosecutor's statement is susceptible to at least "two possible readings, the remarks do not rise to the level of obvious error," as is necessary to satisfy the second prong of the plain error test. *Vargas*, 580 F.3d at 279. There was no plain error in this prosecutorial remark.

Second, Vasquez argues that the prosecution improperly argued outside the record when it made the following comments during closing argument:

> The government, we brought all these people here. . . . We tried to leave no stone unturned. Some people didn't even want to be here. You heard one witness that was excited about getting out of here. That's reasonable. It's not fun being up there in that stand. But yet we did our investigation, and we tried to turn every stone that was there. *And the complete picture from my investigation* and the evidence is that that defendant, Pedro Vasquez, brought those drugs in his truck, and he did so knowingly.

(Emphasis added). It is well-settled that a prosecutor may not refer or even allude to evidence not adduced at trial. *United States v. Murrah*, 888 F.2d 24, 26 (5th Cir. 1989). Read in isolation, the prosecutor's reference to "my

investigation" is concerning.  At the very least, it reflects poor word choice and should have been avoided.  Nevertheless, Vasquez has not shown that the prosecutor's remark was plain error.  In context, "my investigation" can also be understood as referring to the testimony of the agents who discovered the cocaine and conducted the subsequent investigation.[5]

## IV.    Whether the district court's sentence was unreasonable?

According to the PSR, Vasquez's Guideline's sentencing range was 121–151 months and the statutory range was 120 months to life.  The district court sentenced Vasquez to 125 months, explaining that it sentenced Vasquez to five months above the statutory and Guidelines minimum because of the large quantity of cocaine involved and the fact that Vasquez was convicted on three separate counts.

Vasquez argues that his sentence was procedurally erroneous because the number of counts of conviction is an improper consideration for a district court. However, Vasquez cites no binding precedent for the proposition that a district court may not consider the number of counts of conviction.  Thus, Vasquez has not established plain error.  *See United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009) (error not plain where argument is novel and unsupported by circuit precedent).

Vasquez also argues that his sentence was substantively unreasonable. He argues that the district court failed to adhere to the principle that a district court "shall impose a sentence, sufficient, but not greater than necessary," to achieve the purposes of sentencing.  18 U.S.C. § 3553(a).  He argues that a sentence above the Guidelines minimum violates this principle because there is

---

[5] Vasquez also argues that it was improper for the prosecutor to argue "that the agents left no stone unturned, in spite of the fact that the evidence revealed that the agents had declined to investigate certain possible leads."  All that the prosecutor said, however, was that the government "*tried* to leave no stone unturned" (emphasis added). Vasquez has not demonstrated error on the basis of this remark.

"nothing to indicate that a sentence above the Guideline minimum was necessary to meet the objectives set forth in 18 U.S.C. § 3553(a)." We disagree. Vasquez's argument would do away with the presumption of reasonableness that we accord to within-Guidelines sentences. *See United States v. Rodriguez*, 660 F.3d 231, 233 (5th Cir. 2011). It is not the government's burden to justify the reasonableness of a within-Guidelines sentence. Rather, it is the defendant's burden to rebut the presumption that such a sentence is reasonable. *See id.*

## Conclusion

For the foregoing reasons, we uphold Vasquez's conviction and sentence. AFFIRMED.