HAYNES, Circuit Judge,
dissenting:
I respectfully dissent. I begin by agreeing with the majority opinion that the standard of review is plain error. I diverge from the majority opinion because I conclude that this standard is case-determinative here. We recently issued a lengthy and detailed en banc opinion, United States v. Delgado, 672 F.3d 320 (5th Cir.2012), describing the standard of review for unpreserved sufficiency of the evidence challenges in a criminal case. In that case, we made clear that “such a claim [of insufficiency] ‘will be rejected unless the record is devoid of evidence pointing to guilt or if the evidence is so tenuous that a conviction is shocking.’ ” Id. at 331 (citation omitted). In other words, Boyd “must demonstrate not just that the government’s evidence of conspiracy was insufficient, but that it was obviously insufficient.” Id. Furthermore, we recognized that although “there will necessarily be some ‘close calls’ on the issue of sufficiency,” plain error review requires that such “close calls ... be resolved in favor of the jury verdict.” Id. at 332 n. 11. While the evidence of conspiracy in this case is thin, the record is not “devoid of evidence,” nor is the conviction shocking.
Boyd argues that the evidence against him supports only a finding that he was in a mere “buyer-seller” relationship with both his supplier and his purchasers. Accordingly, Boyd contends that the government’s evidence was insufficient since it failed to establish a conspiracy separate and apart from the substantive drugs offenses of which he was convicted. However, his argument misunderstands the scope of the buyer-seller exception.
In Delgado, we addressed the limited scope of the (so-called) “buyer-seller exception” to the crime of conspiracy, stating that it “prevents a single buy-sell agreement, which is necessarily reached in every commercial drug transaction, from automatically becoming a conspiracy to distribute drugs.” Id. at 333; see also United States v. Contreras, 249 F.3d 595, 599 (7th Cir.2001) (“[I]n order to establish a conspiracy, ‘[w]hat is necessary and sufficient is proof of an agreement to commit a crime other than the crime that consists of the sale itself.’ ” (citations omitted)); United States v. Mercer, 165 F.3d 1331, 1335 (11th Cir.1999) (per curiam) (“ ‘Where the buyer’s purpose is merely to buy and the seller’s purpose is *832 merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement, no conspiracy has been shown.’” (citation omitted)). As explained in Delgado, the buyer-seller exception is meant to “shield[] mere acquirers and street-level users, who would otherwise be guilty of conspiracy to distribute, from the more severe penalties reserved for distributers.” 672 F.3d at 338.
However, in Delgado, we made it quite clear that this rule will not shield against a conspiracy conviction where the evidence supports the inference(s) that there was more than a mere buyer-seller agreement. Id. at 333-34. Indeed, it is well established that any element of the crime of conspiracy may be inferred from circumstantial evidence and that no evidence of overt conduct is required. See, e.g., United States v. Schmick, 904 F.2d 936, 941 (5th Cir.1990); United States v. Hernandez-Palacios, 838 F.2d 1346, 1348 (5th Cir.1988). In addition, circumstantial evidence can reveal several facts that, standing alone, may be insufficient, but taken together, can support the inference(s) that can be drawn in order for the jury to render a guilty verdict on a conspiracy charge. See United States v. Vasquez, 677 F.3d 685, 694 n. 2 (5th Cir.2012) (per cu-riam). In other words, “ ‘[although none of these ... [alone] is dispositive, if enough are present and point to a concrete, inter-locking interest beyond individual buy-sell transactions, [the reviewing court] will not disturb the fact-finder’s inference that at some point, the buyer-seller relationship developed into a cooperative venture.’ ” Contreras, 249 F.3d at 599 (citation omitted).
Delgado involved a larger quantity of drugs, but it concerned a single transaction. With Boyd, we have a defendant who is selling drugs “24/7” such that the quantities, although small in each case, become large in the aggregate. This case does not involve a “one-off’ buy-sell of a small amount but rather a retail distributor using “friends” as distributors and “people in New Orleans” as suppliers.
Thus, the evidence and the reasonable inferences therefrom demonstrate more than mere buyer-seller agreements. At trial, the government showed that the undercover officer gave Brandi Johnson (“Johnson”) and her niece Angela Lindsay (“Lindsay”) money to purchase crack cocaine for him. Johnson and Lindsay, who regularly purchased crack cocaine from Boyd, made four purchases for the undercover officer from Boyd, prompting Boyd on one occasion to question Johnson about whether the undercover officer “was a cop.” Thus, Boyd knew that Johnson and Lindsay were buying from him to distribute to another person, supporting an inference of conspiracy. In addition, Johnson testified that she made purchases from Boyd oftentimes on a daily basis for herself as well as her friends, and that sometimes, she would hand Boyd the phone to arrange drug deals directly. Also, Johnson stated that as Boyd and Johnson became more comfortable with each other over the course of countless drug transactions, both the drugs she bought and received from Boyd and Boyd’s business increased in amount and frequency, again supporting (though not compelling) a conclusion of conspiracy.
In addition, Lindsay testified that because the undercover officer refused to share the drugs but would give her some money, she would take the money to Boyd’s house to buy herself drugs. Further, Lindsay stated that she would place a phone call to Boyd to arrange a purchase at his house, but usually somebody other than Boyd would come to the door and consummate the transaction. Corroborat *833 ing the latter statement, Boyd’s cousin Evelyn French (“French”) testified that before she moved into Boyd’s house, a man nicknamed “Pa-Poochie” lived there with Boyd and would “watch the door.”
Furthermore, French testified that after she moved in with Boyd, she observed Boyd selling drugs at his home and making deliveries twenty-four hours per day, seven days per week, and that she saw up to thirty people per day come to the home to buy as much as $300 worth of drugs per transaction from Boyd. In addition, French stated that whenever someone called her looking for drugs, she would refer them to Boyd and that she and Boyd would go together to consummate these transactions. Indeed, on direct examination by the government, French recounted one such incident where someone called her looking for drugs, French then contacted Boyd, who picked her up, and “we made the sale.”
Moreover, French testified that Boyd would make trips to New Orleans to replenish his drug supply on an almost-daily basis. According to French, she would occasionally accompany Boyd on these trips, although she did not go inside. Furthermore, French testified that after Boyd was arrested, she went to the home of Boyd’s mother, where Boyd maintained a locked bedroom. Whereas French initially claimed that only Boyd had a key to the locked bedroom in his house, French admitted that she had a key this locked bedroom, and that after Boyd’s arrest, she and Boyd’s other family members searched the room and found a quantity of drugs that was promptly flushed down the toilet (further conduct in support of a conspiracy and aiding in the cover-up).
As demonstrated from the foregoing, the record before us is not devoid of evidence that Boyd was knowingly involved in a conspiracy with both known and unknown persons. At a minimum, the jury could have inferred that Boyd sold drugs to people referred by Lindsay, Johnson, and French and that these three women made referrals to Boyd because there was joint cooperation and a strong level of trust. See United States v. Maseratti, 1 F.3d 330, 336 (5th Cir.1993) (“One becomes a member of a drug conspiracy if he knowingly participates in a plan to distribute drugs, whether by buying, selling or otherwise.”); United States v. Featherson, 949 F.2d 770, 775 (5th Cir.1991) (“Featherson had drug-related contacts with [a co-defendant] Ray, accepted referrals from Ray and had an apartment ... near those frequented by [his co-defendants].”). Additionally, from Johnson’s testimony that Boyd’s business and the drugs she bought and received from Boyd increased in both amount and frequency as their relationship progressed, the jury could have inferred that they had an ongoing, mutually dependent relationship whereby Boyd made more drug sales and Johnson, on almost a daily basis, got a favorable price or more drugs than Boyd’s other buyers. See United States v. Dortch, 5 F.3d 1056, 1065-66 (7th Cir.1993).
Moreover, French’s testimony that she and Boyd “made the sale,” supports a perfectly reasonable inference that they shared a common purpose to distribute drugs to a third party. Indeed, Boyd’s nephew, Arthur Robertson, testified that even after Boyd was arrested, he saw French selling drugs out of Boyd’s house. In addition, the jury could have reasonably believed that French was serving as a lookout for law enforcement when she waited in Boyd’s car outside the supplier’s house in New Orleans. That French lived with Boyd, accompanied him during drug deals and trips to replenish his supply, and had a key to Boyd’s locked bedroom in his mother’s home where he kept a supply of *834 drugs that French and Boyd’s other family members found and flushed, all support an inference of knowledgeable, voluntary participation since it would be unreasonable for anyone other than a knowledgeable participant to be present or have such access. See United States v. Martinez, 190 F.3d 673, 676 (5th Cir.1999). As the majority opinion notes, it is not necessary to prove an express agreement, United States v. Lewis, 476 F.3d 369, 383 (5th Cir.2007), so the lack of testimony by French describing a “let’s be drug distributors together” conversation is not disposi-tive.
In addition, the jury could have reasonably concluded that Boyd also conspired with his unknown supplier: Boyd had $2,318 in cash when he was arrested; police found approximately 30 grams of crack cocaine, a loaded handgun, and various drug-dealing paraphernalia in his bedroom; Boyd possessed up to an ounce of crack cocaine at a time but never smoked crack cocaine; up to thirty people per day bought as much as $300 worth of crack cocaine per transaction at Boyd’s home; Boyd sold crack cocaine at his home and made deliveries twenty-four hours per day, seven days per week; and Boyd traveled on nearly a daily basis to New Orleans to replenish his supply. Although the evidence regarding the exact nature of Boyd’s relationship with his unknown supplier is admittedly cloudy, the jury still could have reasonably inferred from the evidence as a whole that Boyd’s supplier was not an “arms-length” supplier. See United States v. Mendez, 496 F.2d 128, 130 (5th Cir.1974) (“No formal agreement between the parties is essential to the formation of a conspiracy, for the agreement may be shown by concerted action, all the parties working together understanding^ with a single design for the accomplishment of a common purpose.” (citation omitted)); see also United States v. Klein, 560 F.2d 1236, 1243 (5th Cir.1977). Indeed, the jury could reasonably find it incredible that Boyd could engage on a daily basis in enough buy-sell transactions with “arms-length” suppliers to sustain his business of selling crack cocaine twenty-four hours per day, seven days per week, to thirty people per day who were purchasing as much as $300 worth of crack cocaine at a time.
Taking all the evidence and the reasonable inferences therefrom together, by no means was the evidence that Boyd conspired with known and unknown persons insufficient, let alone “obviously insufficient.” See Delgado, 672 F.3d at 331. This case presents a “close call.” Our precedent requires that the “close call” be resolved in favor of the jury verdict. Id. at 332 n. 11. Accordingly, I respectfully dissent from the judgment vacating the conspiracy conviction.