# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 16, 2013

Lyle W. Cayce
Clerk

No. 11-41331

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ADAM EDWIN LIPP,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:11-CR-12-1

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:[*]

A jury convicted Adam Lipp of willfully receiving a firearm while he was under a felony indictment, and the firearm having been in interstate commerce. We reject Lipp's appellate argument that the evidence was insufficient to convict, but we REVERSE because of the district court's erroneous admission of evidence of another crime Lipp may have committed. We REMAND for further proceedings.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-41331

FACTS

The crime for which Lipp was convicted requires that he have been under a felony indictment at the time he received a firearm. Three different felony indictments against Lipp were issued by Texas grand juries from July through September 2010. Each indictment had attached a "Magistrate's Warning" that the charges were felonies. Lipp signed each warning. He also signed a surety bond form, which included the statement that he was charged with felonies.

In February 2011, Lipp sought to purchase a lower receiver from a licensed dealer. That piece of a weapon contains its operating parts and by itself is considered a "firearm" in federal criminal statutes.[1] Lipp told the dealer that his father's AR-15 semi-automatic rifle or perhaps just its receiver fell off the back of a pickup truck, damaging the receiver. Lipp needed to replace it. The dealer testified that the purchase of the upper receiver, which is the barrel and bolt assembly, is not restricted. On the other hand, a person must be 21-years-old before he may purchase the lower receiver. The dealer could not remember whether Lipp was 21. The jury did not hear evidence of Lipp's age or whether the dealer ever told Lipp he could not purchase the receiver. The dealer testified that Lipp came to his store several times in a three-day period – likely twice by himself, once with another male, and finally with his mother. At the time of the first visit, the dealer did not have the receiver but said he would be getting some. When Lipp finally came with his mother, the dealer sold the receiver directly to her. At some point after that, Lipp received the firearm.

---

[1] The definition section applicable to the statute under which Lipp was convicted states that a "firearm" includes "(A)any weapon (including a starter gun), which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [and] (B) the frame or receiver of any such weapon . . . ." 18 U.S.C. § 921(a)(3).

No. 11-41331

A few days after the purchase, Lipp and another individual fired the weapon on private property. Deputy Sheriff Brandon Shafer investigated a complaint about gunshots. When the deputy arrived, Lipp explained that the firearm belonged to his mother and that he was "trying to sight it in." Deputy Shafer left the scene after determining the lower receiver had not been stolen and that the individuals had permission to be on the property.

Days later, Deputy Ernest Castillo saw Lipp and two individuals walking on a road at night, and he saw that one of them was carrying a firearm. After stopping to talk, Deputy Castillo realized they had more than one firearm. Lipp claimed he owned the firearm, which was the one his mother purchased from the dealer's shop. Responding to Deputy Castillo's questions, Lipp stated that he had never been charged with a felony and had never been contacted by law enforcement. Deputy Castillo never specifically asked whether Lipp was "under indictment." After being told by a dispatcher that none of the youths had been convicted of a felony, Deputy Castillo returned the firearms and let the three go.

In March 2011, a federal agent arrested Lipp at his residence for the offense of receipt of a firearm. The record does not explain what caused the arrest warrant to issue. In May 2011, Lipp was indicted for violating 18 U.S.C. Section 922(n) (receipt of firearm while under indictment) and Section 924(a)(1)(D) (setting the punishment for willful violations).

At trial, the district court admitted evidence over objection that the other components of the weapon to which Lipp's lower receiver was attached had recently been stolen. Kenneth Bishop testified that in February 2011, someone stole a gun safe from his hunting cabin. We find Bishop's testimony unclear as to whether a lower receiver was in the safe, perhaps because the prosecutor was

3

No. 11-41331

trying to establish that every part of Lipp's weapon other than the new lower receiver had been stolen. Bishop clearly said that the safe contained an upper receiver, scope and laser assembly. He had provided a photograph of his entire AR-15 to the United States Attorney's Office. It showed a lower and upper receiver with a scope and laser that was attached in an unusual way. After being shown a photograph of the AR-15 Lipp had when Deputy Castillo stopped him along a rural road, Bishop testified that the upper receiver, scope and laser in the photograph were the ones that had been stolen.

Bishop also testified that someone had used his Kubota-brand tractor, stored at the hunting camp, to remove the gun safe through a window. Police later recovered the safe in another county with its bottom cut out and contents missing. Lipp's counsel questioned Bishop about where he kept the keys to his tractor. Bishop stated that he secured the keys in the safe and that any Kubota-tractor keys would start the tractor. The federal agent who executed the search warrant at Lipp's residence later testified that officials discovered two sets of Kubota-tractor keys on the dashboard of Lipp's vehicle.

Lipp moved for a judgment of acquittal partly on the grounds that the government failed to produce sufficient evidence for the jury to find that Lipp willfully violated Section 922(n). The district court denied the motion. The jury found Lipp guilty as charged, and the district court sentenced him to 42 months' imprisonment with three years of supervised release. Lipp timely appealed.

DISCUSSION

*A. Sufficiency of the Evidence*

We review the denial of a motion for a judgment of acquittal *de novo* and ask whether a rational juror could find beyond a reasonable doubt that Lipp

4

willfully violated the law. *United States v. Vasquez*, 677 F.3d 685, 692 (5th Cir. 2012). This court views the evidence in a light most favorable to the verdict and makes all inferences and credibility choices in favor of Lipp's conviction. *Id.*

Lipp challenges the sufficiency of the evidence only as to the jury's finding that he "willfully" violated Section 922(n). That statute provides, "It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to . . . receive any firearm . . . which has been shipped or transported in interstate . . . commerce." 18 U.S.C. § 922(n).

For Lipp to have acted "willfully" under this statute, he must have "acted with knowledge that his conduct was unlawful." *Dixon v. United States*, 548 U.S. 1, 5 (2006) (reading Section 924(a)(1)(D) to impose a *mens rea* requirement for Section 922(n)). The Government was not required to prove that Lipp was aware of the specific federal law he was violating, only that he knew the receipt of the firearm was unlawful. *See Bryan v. United States*, 524 U.S. 184, 191-96 (1998).

The question in *Bryan* was whether a dealer in firearms had acted willfully under Section 924(a)(1)(D) when he sold firearms without the required federal license; there was no evidence he was aware of the need for a license. *Id.* at 186, 189. The district court had refused to instruct the jury that Bryan needed to know of the federal licensing requirement. *Id.* at 189-90. Instead, this instruction was given:

> A person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. Now, the person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the intent to do something that the law forbids.

No. 11-41331

*Id.* at 190. The Supreme Court upheld the instructions on the crime, with a minor exception regarding another instruction not relevant here. *Id.* at 199-200.

The jury in the present case was told that it needed to find that Lipp "acted willfully, that is, that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose to disobey or disregard the law . . . ." The instruction was offered by Lipp, and we conclude it properly focused on the need for evidence that indicated Lipp knew his receipt of the firearm was unlawful – regardless of the exact elements of the offense. In other words, the Government need not prove that Lipp knew the specific reason his receipt was unlawful was because he was under indictment for a felony. One or more jurors may have been concerned about this. A jury note with a multi-part question was given to the district court during deliberations. The jury asked whether Lipp's intent to do "something the law forbids" had to be the receipt of the firearm, or did it have to be "doing something else illegal after receiving the firearm?" The note also asked whether Lipp had "to know he was breaking the specific federal law about receiving the firearm?" After consulting with the attorneys, the district court informed jurors they had all the instructions that would be given and to review those.

Here, there was evidence that Lipp made conflicting statements as to whom the firearm belonged. Lipp told the dealer the lower receiver was for his father's weapon, which he had accidentally damaged. He told one deputy that the weapon was his mother's; he told another that the weapon was his own. There was also evidence that Lipp knew of his three felony indictments but lied to officers about them. Lipp's knowledge was revealed by his signature on notices attached to the indictments and on surety bonds for the offenses, all of

6

which identified the charges as felonies. In addition, the agent who executed the arrest warrant inside Lipp's house saw on the refrigerator a court's "Order of Reset." This document notified Lipp that the state court had rescheduled proceedings on his three felony indictments. Evidence that Lipp denied being under indictment came from Deputy Castillo, who asked Lipp during their encounter along a rural road whether he had ever been charged with a felony or been contacted by law enforcement, and Lipp answered, "No." Such dissembling could be the basis for jurors to infer he knew it was illegal for him to have this firearm. In *Bryan*, the conviction of a dealer for selling firearms without a license was affirmed when there was evidence that Bryan knew the sales were illegal even though he may not have known exactly why. *Bryan*, 524 U.S. at 189. Similarly, it does not matter whether Lipp knew of the prohibition arising from the indictment or thought there was some other illegality, such as being too young. Jurors could find on this evidence that he had the purpose to disobey the law when he received the firearm.

We also examine whether jurors could find Lipp knew of the indictment, since denial of being under indictment is one of his inculpatory statements. Lipp argues that his status of being "under indictment" was "beyond common understanding and arcane," quoting *United States v. Chapman*, 7 F.3d 66, 68 (5th Cir. 1993). In that case, the defendant appealed from his conviction on charges contained in an indictment for burglary. *Id.* at 67. While the appeal was pending, the defendant purchased firearms. *Id.* For that purchase, he was charged with making a false statement in connection with the acquisition of a firearm. *Id.* The Government was required to prove that the defendant was "under indictment" and that "he knew his status." *Id.* at 67-68. Under Texas

No. 11-41331

law, a defendant is considered still to be under indictment during an appeal from a conviction. *Id.* at 68.

To prove Chapman knew he was under indictment, the Government relied on an appeal bond that stated, "Appeal Bond (After Indictment – Felony – Personal Bond)." *Id.* There also was testimony that the defendant, upon being questioned by law enforcement, said he "messed up" on the form he completed at the time he purchased a firearm when he answered "no" to the question of whether he was "under indictment." *Id.* at 67-68. Finally, there was testimony that the defendant stated on a purchase form that he was not a "convicted felon." *Id.* at 68.

The *Chapman* court determined the evidence to be insufficient. *Id.* The appeal bond, by stating "After Indictment," arguably implied that he was no longer subject to the indictment; the defendant's later saying he had "messed up" on the form was too ambiguous to prove he knew his legal status at the time he completed the form. *Id.* As to whether he had a felony "conviction," the state's definition controlled; under Texas law, Chapman's statement that he was not a convicted felon was actually true during the pendency of his appeal. *Id.*

Applying those principles here, we see no implication in the state-court documents that Lipp was no longer under indictment. Unlike Chapman, who under state law was technically not yet convicted, Lipp did not provide Deputy Castillo with an answer that was actually, if surprisingly, true when Lipp said he had not been charged with a felony. The general principle discussed in *Chapman*, that something more may be needed to prove a defendant's knowledge of the meaning of legal terms that are beyond common understanding, has no application here. Jurors had to be able to infer that Lipp knew it was unlawful

for him to receive a firearm. What made it unlawful was that he was under indictment for a felony. No proceedings had yet occurred on those state indictments, and the ambiguities that arose in *Chapman* are absent here.

Lipp argues that other evidence discredits the inference that he acted willfully. The firearms dealer was ambiguous about his reasons for not selling Lipp the firearm. The two deputies who first questioned him about the firearm did not arrest him. Lipp argues it is exculpatory that he claimed ownership of the firearm when Deputy Castillo questioned him, indicating he did not know there was any illegality. Deputy Castillo himself testified that, at the time of their encounter, he was not aware of the federal law against receiving a weapon while under indictment.

We agree with Lipp in part, namely, that there is not overwhelming evidence of his knowledge that he was violating the law. Nevertheless, this court does not re-weigh the evidence. A jury is free to "choose among reasonable constructions of the evidence." *Vasquez*, 677 F.3d at 692. The jury was permitted to determine Lipp's state of mind based on all of the circumstantial evidence presented at trial. *See United States v. Rodriguez*, 132 F.3d 208, 212 (5th Cir. 1997). When viewing the evidence presented to the jury in a light most favorable to the verdict, particularly the evidence that he denied being charged with a felony and gave different answers about who owned the firearm, we cannot say that no rational juror could have found beyond a reasonable doubt that Lipp knew his conduct was unlawful when he received the firearm.

*B. Admissibility of the Evidence*

Lipp filed a motion *in limine* to prohibit the introduction of evidence that would show the firearm's upper receiver and other components were stolen. He

No. 11-41331

argued that such evidence might lead the jury to believe he stole the equipment. He may have, but that was not the charge against him. The district court denied the motion and determined the evidence was more probative than prejudicial. During trial, Lipp objected to cabin-owner Bishop's testimony about the theft, and the district court again overruled the objection.

We review the district court's decisions to admit the evidence for an abuse of discretion and require that the evidence "be strictly relevant to the particular offense charged." *United States v. Jones*, 484 F.3d 783, 786 (5th Cir. 2007).

"Evidence of a crime, wrong, or other act" is inadmissible to prove character for the purpose of showing a defendant's propensity to act in conformity with that character, but such evidence "may be admissible for another purpose, such as proving motive, opportunity, [or] intent . . . ." Fed. R. Evid. 404(b)(1)-(2). A court must decide if such extrinsic evidence (1) "is relevant to an issue other than the defendant's character," and (2) "possess[es] probative value that is not substantially outweighed by its undue prejudice."[2] *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978).

### 1. Relevance

Evidence of prior bad acts "is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). "The government need only provide *some evidence* that the defendant committed the prior bad act." *United States v. Cooks*, 589 F.3d 173, 182 (5th Cir. 2009).

This is a "generous standard," but when the Government produces "no evidence at all" that a defendant committed the prior act, such evidence "is of no

---

[2] There is no argument that this evidence was intrinsic to the charged crime.

No. 11-41331

help to the jury, as it is not possible to say that those acts reflect anything at all about the defendant." *United States v. Gonzalez-Lira*, 936 F.2d 184, 189-90 (5th Cir. 1991). Here, there was evidence that Bishop's upper receiver, scope and laser had been stolen from his hunting cabin at a time immediately preceding Lipp's inquiry about acquiring a corresponding lower receiver from the firearms dealer. Bishop testified that the firearm in a photograph showing Lipp with an AR-15 was built with Bishop's unique upper receiver and components that were stolen from the cabin. Bishop further testified that someone used his Kubota-brand tractor to take the safe from the hunting cabin. Lipp's counsel elicited testimony that the person who used the tractor would need a key. On redirect, the Government asked Bishop to identify a set of keys in a photograph, and Bishop testified that the key appeared to fit a Kubota-brand tractor.

After Bishop's testimony, Lipp moved for a mistrial on grounds that the Government would attempt to prove Lipp stole the firearm's components by producing evidence that officers discovered he had two sets of Kubota-brand tractor keys. The defense accurately predicted the Government's course, as there later was testimony that investigators discovered two separate sets of Kubota-brand tractor keys on the dashboard of Lipp's vehicle. The district court denied the motion, explaining that it allowed Bishop to testify about the theft because the court determined the close temporal proximity of the theft was relevant to the element of receipt and that Lipp invited the testimony about the keys. The court also denied Lipp's alternative request to give the jury a limiting instruction at that time but stated it would include among its instructions to jurors at the end of the case one that stated Lipp was not on trial for anything other than the charges in the indictment. The court gave that instruction.

11

No. 11-41331

There was evidence sufficient to connect Lipp to the prior act. The question then becomes whether the prior-act evidence satisfied other evidentiary rules. The Government has argued that this evidence was relevant for the purpose of establishing Lipp's motive for obtaining the lower receiver. The argument is that because Lipp recently had stolen an upper receiver, it was more probable and thus relevant that he would need to purchase a lower receiver. *See* Fed. R. Evid. 401. We have already noted that Bishop's testimony was unclear as to whether a lower receiver was also stolen from his safe. If the entire AR-15 were stolen, then the evidence of that theft only partly explains why Lipp needed to buy a lower receiver. His story to the dealer that the one he had was damaged gave a possible reason.

A significant difficulty with the Government's argument is that the factual matter on which the evidence was relevant was undisputed. The other-crimes evidence made it more likely that Lipp would want to have an upper receiver, but Lipp never denied involvement in its purchase or using the weapon. The only evidence was that Lipp was the moving force behind his mother's purchase and that he then used the firearm. The only factual matter that the other-crimes evidence corroborated was an uncontested fact shown by the Government's own witnesses. It is true that a defendant cannot stipulate away a relevant fact in order to prevent the Government from presenting evidence of that fact. *Old Chief v. United States*, 519 U.S. 172, 189 (1997). Stipulations could effectively dilute the "full evidentiary force" of testimony and other evidence. *Id.* at 186. The *Old Chief* principle, though, does not give carte blanche to the Government's proving an uncontested fact through direct evidence, then corroborating that same fact through other-crimes evidence.

12

No. 11-41331

Though we see no valid need for this other-crimes evidence, we examine a district court's introduction and exclusion of evidence with considerable deference. *See Jones*, 484 F.3d at 786. After deciding that this evidence was relevant, the district court was aware it had another finding to make. We now turn to the remaining question of admissibility.

*2. Probative Value and the Risk of Undue Prejudice*

Once the other-crimes evidence is found to be relevant, the district court may admit the evidence only if its probative value is not "substantially outweighed by its undue prejudice." *Beechum*, 582 F.2d at 911. We have already identified the probative value, which was that it explained Lipp's motive in ardently pursuing purchase of the lower receiver. That value was negligible, though, as Lipp's receipt of the firearm was uncontested. A risk in admitting extrinsic evidence of other bad acts is that the "jury will convict for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment." *Old Chief*, 519 U.S. at 181.

The charged crime of receiving a firearm while under indictment required the jury to be convinced that Lipp knew he was acting unlawfully when he acquired the lower receiver. The evidence of his knowledge is circumstantial, arising from his failure to be truthful about other matters. He told the dealer that he needed to buy a new lower receiver to replace one for his father's weapon that was damaged; jurors could decide that statement was false. Lipp's conflicting statements to two different deputies about who owned the weapon also could be used to infer knowledge of illegal conduct in having the firearm. Ironically, the other-crimes evidence presented an entirely different reason Lipp may have lied. Because that evidence supported that Lipp had stolen the rest

13

of an AR-15, it might be assumed Lipp would be less than certain what to say to a law enforcement officer about whose firearm it was. Lipps' certain knowledge that it was illegal to steal a firearm does not support that he knew it was illegal to obtain from his mother a lower receiver properly purchased by her.

There was no evidence that Lipp ever was told that his felony indictments made it unlawful for him to receive a firearm. A juror's reasonable doubt about Lipp's awareness that the receipt was illegal could have seemed inconsequential due to the evidence that Lipp was likely a gun thief.

The evidence of another crime contained very little probative value compared to the strong risk of undue prejudice to Lipp. We determine that such value was substantially outweighed by the risk. We conclude the district court abused its discretion in admitting such evidence.

### 3. Harm

Even though there was error in the admission of the evidence about a stolen AR-15, we will not reverse a conviction when the error is harmless. *United States v. Sumlin*, 489 F.3d 683, 688 (5th Cir. 2007). There was no harm here unless "there is a reasonable probability that the improperly admitted evidence contributed to the conviction." *Id.* We have already addressed the related issue of prejudice. Our determination that it was prejudicial to admit the evidence of the burglary of the hunting cabin overlaps to some degree the analysis of whether admission affected the outcome.

What this final analytical task adds to the earlier finding of prejudice is that we are to examine "the error in relation to the entire proceeding, not merely in isolation." *United States v. Hawley*, 516 F.3d 264, 268 (5th Cir. 2008). "When the other evidence of guilt is overwhelming, and the error would not have

No. 11-41331

substantially influenced the jury's verdict, the error is harmless." *Id.* The Government has the burden to prove harmlessness beyond a reasonable doubt. *United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008).

There was not overwhelming evidence that Lipp was aware that his acquiring the lower receiver was an offense, *i.e.*, that he willfully violated the law when he received a firearm from his mother after she purchased it from the dealer. The evidence that Lipp was guilty of the burglary may well have appeared far stronger to jurors than the evidence of willfulness. Doubts about the willfulness of his receipt too easily could have been dispelled by the absence of doubts of his theft. Consequently, a reasonable probability exists that the evidence about the other crime substantially influenced jurors' decision.

We find no error in the district court's denial of the motion for acquittal. There was sufficient evidence for a rational juror to find beyond a reasonable doubt that Lipp willfully violated Section 922(n). The district court abused its discretion, though, by allowing the admission of the extrinsic evidence.

We REVERSE and REMAND for further proceedings.